1  KENNETH D. SISCO, Esq., Cal. Bar No. 69814
   Sisco & Naramore
2  3574 Bluff Street
   Norco, California  92860
3  714  265-7766
   skendbiz@gmail.com
4
   Attorney for Defendant,
5  Freedom Equity Group, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| FIRST FINANCIAL SECURITY, INC., a Delaware corporation, | Case No.  C 15-1893-HRL |
|---|---|
| Plaintiff and Counterclaim-defendant, | **OPPOSITION TO MOTION FOR SANCTIONS; DECLARATIONS OF MICHAEL JONES; BILL ST. CLAIR, RONALD PETRINOVICH; AND KENNETH D. SISCO** |
| v. | |
| FREEDOM EQUITY GROUP, LLC, a California limited liability company, | |
| Defendant and Counterclaimant. | |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction and Background.

Generally, Plaintiff's statement of background is accurate. Moreover, as stated before, Plaintiff has been professional, reasonable and patient to a fault, in putting up with undersigned's health problems, work problems and technological ignorance.

Having said that, however, it is respectfully submitted that this Motion is unreasonable, overreaching, and insists on the production of documents that do not exist and for the most part have never existed. As stated on numerous occasions, FEG wishes to fully comply, not only with FFS requests, but certainly with the Court's Order. We believe we have done so to the extent it is possible.

As stated in the Motion, FEG has served on FFS an Amended and Supplemented Response to RFP I and RFP II, which is attached to Plaintiff's Motion as Exhibit F. We believe that this Response fully explains FEG's inability to provide FFS with the documents it wants. As noted in Footnote 3, on page 8 of the Motion "Although unnecessary under Rule 34, Mike Jones verified these responses under penalty of perjury. (Ex. F at 15.)"

Even at this point, if we can be informed as to how to produce any requested documents, we will do it.

The items FFS are most concerned with are as follows:

1. Text messages and phone records (Set One RFPs 60-63)

There are no longer, any such documents. Texts were innocently deleted. It did not occur to any of the principles that there were text messages that would be important

-1-

OPPOSITION TO MOTION FOR SANCTIONS

to either FFS or FEG. Phone records were requested from the phone company, but the principles were told, that records are kept only for a year. By the time they were requested, the records had already been deleted.

Undersigned understands that it is no excuse for not keeping and producing evidence, but it is respectfully submitted that this is a very minor item. If FEG really did solicit FFS agents to come over to FEG, there are literally hundreds of persons who could, and would, testify to that fact. Many agents chose not to leave with Moua and Lee, including Moua's brother and Lee's sister, and are still in the FFS organization.

2. Documents leading to the alleged waiver of application fee for new FEG agents (Set One RFP 28)

If any such documents exist, FEG does not know how to access them. Since the agents were not being paid commissions as a result of their being terminated by FFS, Michael Jones verbally suggested that the fee be waived, and the agents were not charged. See Jones Declaration at Paragraph 7.

3. Underlying data regarding who joined FEG and when (Set One RFP 30, 32).

FEG produced a 104 page spread sheet providing the requested information and much more. There are no "underlying data;" it is a data base. One makes a query, specifying the information wanted, and a report is generated. A true copy of the first page of this 104 page spread sheet is attached to Sisco's Declaration as Exhibit A.

4. Electronic or other copies of contractors' applications to enroll with FEG (Set One RFP 30-32).

No such applications are retained. Anyone may apply to FEG to be an agent.

When they do so, they go on line, and read and fill out the application/agreement. At the end, if they agree, they check a box indicating their agreement, and that checking the box indicates that they do in fact agree. If the prospect wants, he/or she may print off the document and keep it for their records. But once the applicant logs off, the application/agreement disappears. The information typed into the form is retained in a data base, and the applicant is issued a number. The only proof FEG has, that the applicant digitally signed the agreement, is that the agent was issued a number, and no agent is issued a number unless he checks the box.

Undersigned is informed and believes that FFS uses exactly the same system. It did not attach a signed agreement to the Complaint herein. Perhaps FFS could provide a signed agreement, along with its reply.

5. <u>Native data</u> showing the financial performance of Gilles Moua's team, (Set One RFP 9)

FEG produced an excel spread sheet providing the requested information and much more. There are no "underlying data;" it is a data base. One makes a query, specifying the information wanted, and a report is generated.

6. Documents relating to the January, 2014 meeting in Texas among FEG's leaders, Michael Jones, Gilles Moua and Mai Lee at which the attendees discussed Moua's and Lee's desire to depart FFS (Set One RFP 11).

Except for the template for the "Non-Solicitation Agreement," there were no such documents.

7. Documents showing when FEG Chairman Ron Bloomingkemper made

travel arrangements to attend a conference to welcome Moua's team after they left FFS – a conference that occurred only days after the mass departure (Set One RFP 54).

Here, Plaintiff mischaracterizes the RFP. The actual request and response are as follows:

> **Request No. 54:** All materials constituting or relating to MOUA's presentation at the Crowne Plaza Hotel in St. Paul, Minnesota, on or about May 19, 2015.
>
> **Response:** Responding Party states that it cannot comply with this request. Responding Party has performed a diligent search and a reasonable inquiry has been made in an effort to comply with the demand. Despite this search and a reasonable inquiry, Responding Party is unable to comply with this request because Responding Party is informed and believes that Responding Party has no such items in its possession or under its control.

This was a Moua Team event in Minneapolis-St Paul, where Moua resides. Thus FEG had no documents concerning this event.

8. The FEG Agreement actually signed by Moua (Set Two RFP 9).

No such FEG Agreement was retained. Anyone may apply to FEG to be an agent. When they do so, they go on line, and read and fill out the application/agreement. At the end, if they agree, they check a box indicating their agreement, and that checking the box indicates that they do in fact agree. If the prospect wants, he/or she may print off the document and keep it for their records. But once the applicant logs off, the application/agreement disappears. The information typed into the form is retained in a data base, and the applicant is issued a number. The only proof FEG has, that the applicant digitally signed the agreement, is that the agent was issued a number, and no agent is issued a number unless he checks the box. Undersigned is informed and believes

-4-

that Moua did not print off a copy for his records, and thus no such copy exists, or ever existed.

Undersigned is informed and believes that FFS uses exactly the same system. It did not attach a signed agreement to the Complaint herein. Perhaps FFS could provide a signed agreement, along with its reply.

## II. Argument

None of the shortcomings described by Plaintiff in the instant motion, was motivated by disrespect for the court, or any kind of bad faith, or desire to hinder or prejudice the plaintiff in its preparation for trial. There was no need to "persuade" undersigned clients to make the required productions and comply with the Court's requirements and orders. (Footnote 2 on page 7 of the motion.)

It was simply a matter of working through undersigned's health problems, work problems and technological ignorance. Until this case, undersigned did not know what a "Native File" is, much less how to produce one, nor did his client.

### A. FEG Spoliated Evidence

There is no getting around the fact that texts were deleted; but any Texts that were deleted, were innocently deleted. It did not occur to any of the principles that there were text messages that would be important to either FFS or FEG. Indeed Michael Jones testified in his Minnesota deposition, and in his declaration attached hereto, that after the January, 2014 meeting he told the other principles that until Moua makes his final decision to leave FFS, they should not communicate electronically regarding it.

At page 13, line 11, of the Motion, it states, "Mike Jones ... has been made

painfully aware of the requirement that litigants preserve documents." While that is true, that is a lesson that was not learned until long after the texts had been deleted.

**B. FEG's Failure to Produce Phone Records.**

As stated above, phone records were requested from the phone company, but the principles were told, that records are kept only for a year. By the time they were requested, the records had already been deleted.

**C. FEG's Failure to Produce Native Versions of Data regarding Moua's Team.**

FEG produced a 104 page spread sheet providing the requested information and much more. FEG also produced an Excel Spreadsheet showing the production of Moua's team. There are no "underlying data;" it is a data base. One makes a query, specifying the information wanted, and a report is generated. A true copy of this 104 page spread sheet is attached to Sisco's Declaration as Exhibit A.

In the absence of some evidence, or reason to believe, that the spreadsheet is inaccurate or has been tampered with in some way, the interests of justice dictates that this is sufficient.

**D. The Court Should Not Impose Adverse Inferences**

There is no question that the Court has the authority to impose sanctions, as set forth in Plaintiff's points and authorities. But as in any case, sanctions must be reasonable and just. Plaintiff has pointed to no evidence that shows that anyone acting on behalf of FEG, acted in bad faith. On the contrary, the principles of FEG were unaware of the letter demanding that FEG not destroy evidence or documents, as set forth in their declarations, attached hereto. Moreover, while they anticipated that there may be

-6-
OPPOSITION TO MOTION FOR SANCTIONS

litigation, or at least disputes, between Moua and FFS, and perhaps FEG's insurance carriers, they did not anticipate FFS suing FEG.

The only documents destroyed by FEG, were text messages, and there is no evidence that those texts contained any evidence at all.

The only documents FEG failed to produce are documents that never existed, for example the agent applications and Moua's individual application. It should be noted again here, that Plaintiff attached a generic Agent Agreement to its complaint, as opposed to an Agreement signed by Moua. A reasonable inference is that FFS's system does not provide for keeping its applications/agreements, either.

The proposed jury instruction would be fatal to FEG's defense, and all without any evidence that FEG acted in bad faith, or that the texts contained any relevant evidence at all.

### E. FEG Should Not Be Required to Pay Monetary Sanctions.

While undersigned is by no means implying that the instant motion was brought in bad faith, it is respectfully submitted that the Motion is unreasonable and unnecessary. FRCP 37(b)(2) provides the exception, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."

As set forth above there is no evidence that the deleting of text messages was anything more than thoughtlessness. Everyone deletes their stale text messages. There is no evidence, first, that the text messages contained any relevant evidence, whatsoever. Second, there is no evidence that FEG deliberately deleted text messages that it knew contained relevant evidence, for the purpose of depriving FFS of needed evidence.

Moreover, this case involves the allegation that FEG wrongfully solicited agents away from FFS. There are probably close to 2000 people involved in this transaction, including those agents that left FFS to go to FEG; those agents who declined to leave FFS to go with FEG; and those people who knew about agents leaving FFS to go to FEG. This should be a slam dunk. At least some of those people, especially those who stayed with FFS, should be willing to testify, under oath, that FEG approached agents to wrongfully solicit them to go to FEG. Such testimony and evidence would make a few text messages seem insignificant.

### III.   CONCLUSION

For the reasons set forth above, it is respectfully submitted that Plaintiff's Motion be denied in whole, and that Defendant, FEG be awarded, its reasonable costs and expenses, as approved by the Court.

SISCO AND NARAMORE

By _____
Kenneth D. Sisco (SBN 69814)
Attorneys for Defendant FEG
Email: skendbiz@gmail.com

# DECLARATION OF MICHAEL JONES

STATE OF NORTH CAROLINA, COUNTY OF MECKLENGURG

I, MICHAEL JONES, state:

1. At all times relevant to this matter I was a special representative of Defendant, Freedom Equity Group, LLC, hereinafter referred to as FEG.

2. This Declaration is in support of FEG's Opposition to Plaintiff's Motion for Sanctions.

3. I have been informed that I am being accused of wrongfully deleting text messages from my phone. I rarely use texting myself, and when someone texts me, I usually respond with the word "email." It is true that I routinely delete what few text messages there are, from my phone, as I believe most people do. If I deleted a text message that I shouldn't have, it was purely out of ignorance or inadvertence.

4. First, I do not recall ever texting with either Mai Lee or Gilles Moua, prior to their contracting with FEG, or even after. Second, I know for certain that I never communicated with Mai Lee or Gilles Moua, or anyone else, for the purpose of soliciting Mai Lee or Gilles Moua to come over to FEG. On the contrary, as I recall, they contacted us first, and both Ron Petrinovich and Bill St. Clair, were very suspicious that we were being set up to have our relationship with our Insurance provider LSW, terminated, for soliciting another company's agents. Accordingly, I was asked to handle everything concerning those issues, and I advised Petrinovich and St. Clair, not to communicate electronically, until Moua had made a final decision as to what he wanted to do.

5. I did not anticipate a lawsuit between FFS and FEG until the lawsuit was served. Each time I expressed concern that there would be a lawsuit, I was thinking of a possible lawsuit by FFS against Gilles Moua, not FEG.

6. I do not recall any knowledge of the letter from FFS demanding that FEG not destroy any possible evidence in a lawsuit between FFS and FEG, prior to the day of my deposition in this FEG case.

7. Since the agents were not being paid commissions as a result of their being terminated by FFS, I verbally suggested that the fee of $125, be waived, and the agents were not charged.

Except for those facts stated on information and belief, the facts stated above are of my own personal knowledge, and if called upon to testify to the above, I could competently do so.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 3, 2016

_____
Michael Jones

# DECLARATION OF BILL ST. CLAIR

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I, BILL ST. CLAIR, state:

1. At all times relevant to this matter I was and am, the President of Freedom Equity Group, LLC, hereinafter referred to as FEG. I am generally familiar with its day to day activities.

2. This Declaration is in support of FEG's Opposition to Plaintiff's Motion for Sanctions.

3. I have been informed that I am being accused of wrongfully deleting text messages from my phone. It is true that I routinely delete text messages from my phone as I believe most people do. If I deleted a text message that I shouldn't have, it was purely out of ignorance or inadvertence.

4. First, I do not recall ever texting with either Mai Lee or Gilles Moua, prior to their contracting with FEG. Second, I know for certain that I never communicated with Mai Lee or Gilles Moua, or anyone else, for the purpose of soliciting Mai Lee or Gilles Moua to come over to FEG. On the contrary, as I recall, they contacted us first, and I was very suspicious that FFS was trying to set us up to have our relationship with our Insurance provider LSW, terminated, for soliciting another company's agents. Accordingly, Michael Jones was designated to handle everything concerning those issues.

5. Until today, I was unaware of any letter from FFS demanding that FEG not destroy any possible evidence in a lawsuit between FFS and FEG.

Except for those facts stated on information and belief, the facts stated above are of my own personal knowledge, and if called upon to testify to the above, I could competently do so.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 3, 2016

_____
Bill St. Clair

1

# DECLARATION OF RONALD PETRINOVICH

STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

I, RONALD PETRINOVICH, state:

1. At all times relevant to this matter I was and am, the Chief Executive Officer of Freedom Equity Group, LLC, hereinafter referred to as FEG. I am generally familiar with its day to day activities.

2. This Declaration is in support of FEG's Opposition to Plaintiff's Motion for Sanctions.

3. I have been informed that I am being accused of wrongfully deleting text messages from my phone. It is true that I routinely delete text messages from my phone as I believe most people do. If I deleted a text message that I shouldn't have, it was purely out of ignorance or inadvertence.

4. First, I do not recall ever texting with either Mai Lee or Gilles Moua, prior to their contracting with FEG. Second, I know for certain that I never communicated with Mai Lee or Gilles Moua, or anyone else, for the purpose of soliciting Mai Lee or Gilles Moua to come over to FEG. On the contrary, as I recall, they contacted us first, and I was very suspicious that FFS was trying to set us up to have our relationship with our Insurance provider LSW, terminated, for soliciting another company's agents. Accordingly, Michael Jones was designated to handle everything concerning those issues.

5. Until today, I was unaware of any letter from FFS demanding that FEG not destroy any possible evidence in a lawsuit between FFS and FEG.

Except for those facts stated on information and belief, the facts stated above are of my own personal knowledge, and if called upon to testify to the above, I could competently do so.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 3, 2016



Ronald Petrinovich

1

## DECLARATION OF KENNETH D. SISCO

STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

I, KENNETH D. SISCO, state:

1. I am the attorney for, Defendant, FEG, admitted to practice before all the State Courts in the State of California, as well as, the U.S. District Court for the Northern District of California.

2. This Declaration is in support of FEG's Opposition to Plaintiff's Motion for Sanctions.

3. I have been informed that I am being accused of wrongfully deleting text messages from my phone. It is true that I routinely delete text messages from my phone as I believe most people do. If I deleted a text message that I shouldn't have, it was purely out of ignorance or inadvertence.

4. Attached hereto as Exhibit A, is a true copy of the first page of the 104 page spread sheet, containing the underlying data regarding who joined FEG and when.

Except for those facts stated on information and belief, the facts stated above are of my own personal knowledge, and if called upon to testify to the above, I could competently do so.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 3, 2016

_____
Kenneth D. Sisco

1

# CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June, 2016, the **OPPOSITION TO MOTION FOR SANCTIONS** was filed electronically. Notice of this filing was sent to the following parties by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

SUSSMAN SHANK LLP
David D. VanSpeybroeck
Clifford S. Davidson
1000 SW Broadway, Suite 1400
Portland, OR 97205

Dated: June 3, 2016

*/s/ Kenneth D. Sisco*
KENNETH D. SISCO, Attorney for Defendant
FREEDOM EQUITY GROUP, LLC
Email: skendbiz@gmail.com