E-filed 10/7/2016

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| FIRST FINANCIAL SECURITY, INC., Plaintiff, v. FREEDOM EQUITY GROUP, LLC, Defendant. | Case No. 15-cv-1893-HRL<br><br>**ORDER GRANTING IN PART PLAINFIFF'S MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 70 |
|---|---|

First Financial Security, Inc. ("FFS") sues Freedom Equity Group, LLC ("FEG") for intentional interference with contract and related violations of California's Unfair Competition Law ("UCL"); FFS alleges FEG induced approximately 1,400 sales contractors to leave FFS and join FEG en masse. Dkt. No. 1 at 8. Former FFS sales contractors Gilles Moua ("Moua") and Mai Lee ("Lee") hosted meetings with various FFS team members on May 10, 2014. Around the same time, Moua, Lee, and many of those team members resigned from FFS and joined FEG. *Id.* Almost all discovery, much of which focuses on these May 2014 meetings, concerns the extent to which FEG engineered the wholesale departure of the FFS sales contractors.

FFS moves the court to sanction FEG for the spoliation of evidence and for noncompliance with a prior court order that directed FEG to produce evidence, including native-format copies of discoverable digital data. FFS requests: (1) adverse-inference jury instructions; and (2) an award of the attorney fees and costs caused by FEG's noncompliance with discovery orders. FFS argues these requests may be granted based on Federal Rule of Civil Procedure ("FRCP") 37(b)(2) and this court's "inherent authority to craft an appropriate sanction" to remedy prejudice caused by discovery misconduct. Dkt. No. 70 at 17.

**Background**

The parties filed Discovery Dispute Joint Report 1 ("DDJR 1") after FEG had concededly

failed to produce duly requested discovery materials. Those materials included, inter alia: (1) text messages possessed by FEG principals; (2) employment applications submitted by former FFS contractors; (3) native-format copies of digital data related to the circumstances in which FEG hired the former FFS contractors; and (4) phone records. FEG apologized for its failures, but stated that it would be able to efficiently fulfill its discovery obligations after it finished replacing an outdated computer system with a more modern one. The court, based on FEG's conceded failure to comply with its discovery obligations and absent any substantive opposition, ordered FEG to produce the discovery materials FFS had requested. Dkt. No. 62 at 2.

FEG failed to produce the text messages, employment applications, phone records, and native-format copies of digital data requested by FFS. Dkt. No. 70-1 at 4. FFS therefore filed its sanctions motion. FEG concedes in its opposition brief that the texts "were deleted" but argues that these texts were "innocently" deleted by people who did not understand their discovery obligations. Dkt. No. 74 at 3, 6-7. FEG also asserts: (1) the phone records were deleted by the phone company because those records "are kept only for a year"; (2) there is no native-format data to produce, because the data "is a data base" that can be reviewed through "a query"; and (3) FEG never possessed any employment applications, because the information in any given employment application is digitally submitted directly to a "data base" and no application document is separately retained. *Id.* at 3-7.

The court heard oral arguments on the motion. FEG's counsel conceded at the hearing that FEG had created and produced a physical spreadsheet instead of producing native-format copies of the underlying data; the court ruled in an interim order that FEG was obligated to produce, instead, the native-format data, Dkt. No. 81 at 1, and the interim order required FEG's counsel, if he was "unable" to produce the data, to "work with Plaintiff's counsel to create the necessary copy or copies," *id.* The interim order also required FEG to file a declaration: (1) to clarify whether FEG had retained employment applications from the former FFS contractors in any form; and (2) to explain how information from the employment applications had become assimilated in FEG's data. *Id.*

FEG responded to the interim order with a declaration by Executive Vice President Jeffrey

Wordell ("Wordell"). Dkt. No. 82-1. Wordell states that FEG "does not have now, nor has it ever had, the data that is at issue in this case" because "for several years" FEG has relied on third-party "software service provider[s]" to receive and store the "data" related to FEG contractors; Greystar Solutions ("Greystar") initially stored the pertinent data for FEG, and now FEG has "transition[ed]" to Salestrakr. *Id.* at 1. Wordell states that FEG could not comply with the court's interim order because Greystar "ha[s] no obligation to turn over" the data absent a court order to do so. *Id.* at 2.

FFS, in response to Wordell's declaration, requested an additional adverse inference related to "the FEG contractor data." Dkt. No. 83. The court directed the parties to submit supplemental briefing on FFS's request for an additional adverse inference, Dkt. No. 85 at 1-2, and each party timely complied, Dkt. Nos. 86, 87. FFS argues it was misled by FEG and that FEG controls the data it failed to produce, even if FEG does not directly possess it. Dkt. No. 86. FFS supports its brief with: (1) deposition transcripts of FEG principals; (2) exhibits that demonstrate data-export functionalities available online to Salestrakr clients; (3) a copy of the license agreement Greystar offers online to prospective clients; (4) copies of the subpoena that requested the data from FEG; (5) FEG's responses to the subpoena; (6) several correspondences between counsel; and (7) a declaration by counsel for FFS. Dkt. Nos. 86-1, 86-2. FEG argues in its supplemental brief that FEG did not intend to mislead FFS and that FFS has not been prejudiced. Dkt. No. 87.

## Legal Standards

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). District courts have "broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Id.* "[M]agistrate judges throughout the Ninth Circuit have commonly relied on their inherent power to issue adverse inference jury instructions as a sanction for spoliation." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 985 (N.D. Cal. 2012) (collecting cases). When considering whether to impose a spoliation sanction, judges generally

3

consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Id.* at 992.

The most recent amendment to Federal Rule of Civil Procedure ("FRCP") 37(e) prescribes a distinct standard for issuing sanctions in response to the spoliation of electronically stored information. If a party was obligated to preserve the lost information "in the anticipation or conduct of litigation" and the party "failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," then: (1) upon a finding of prejudice the court "may order measures no greater than necessary to cure the prejudice"; or (2) upon a finding of acting with intent to deprive another party of the evidence the court may presume the lost information was unfavorable to the party, or instruct the jury "it may or must presume the information was unfavorable to the party," or "dismiss the action or enter default judgment." Fed. R. Civ. P. 37(e); *e.g.*, *Matthew Enterprise, Inc. v. Chrysler Group LLC*, Case No. 13-cv-04236-BLF-PSG, 2016 WL 2957133 at *1 (N.D. Cal. May 23, 2016).

FRCP 37(b)(2)(A) authorizes a district court to remedy the violation of a discovery order with a "just" sanction. FRCP 37(b)(2)(A) contemplates several possible sanctions, but this is not a comprehensive list, and so FRCP 37(b)(2)(A) authorizes a district court to issue an adverse-inference jury instruction as a remedy when "bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence." *Karnazes v. County of San Mateo*, 09-cv-0767-MMC-MEJ, 2010 WL 2672003, at *2-3 (N.D. Cal. July 2, 2010) (awarding an adverse-inference jury instruction when plaintiff failed to facilitate the deposition of her treating physician). Any such sanction must be "just" in light of the particular circumstances of the case. *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982). A district court "has great latitude in imposing sanctions for discovery abuse," *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996), and the sanctions available under FRCP 37(b) "must be applied diligently" in order to "penalize those whose conduct . . . warrant[s] such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent," see *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012) (quoting *Nat'l Hockey League*

*v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)) (internal quotation marks omitted).

FRCP 37(b) also directs district courts to monetarily sanction a party that fails to obey a discovery order; the party shall "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

**Discussion**

A.  Spoliation of Text Messages

The court ordered FEG to produce any pertinent text messages possessed by Michael Jones ("Jones"), Ron Bloomingkemper ("Bloomingkemper"), Ronald Petrinovich ("Petrinovich"), or Bill St. Clair ("St. Clair"). *See* Dkt. No. 62; *see also* Dkt. No. 70-3 at 48-49. FEG admits "[t]here is no getting around the fact that [the] texts were deleted" and "[t]here are no longer[] any such documents." Dkt. No. 74 at 6. FEG submits declarations in which Jones, Petrinovich, and St. Clair each swear "[i]f [he] deleted a text message that [he] shouldn't have, it was purely out of ignorance or inadvertence" and that each of them has a habit of "routinely delet[ing] text messages[.]" Dkt. No. 74 at 10-13. FEG did not submit a declaration from Bloomingkemper.

FRCP 37(e) governs whether adverse-inference sanctions should be issued against FEG for the spoliation of this electronically stored information. *See Matthew*, 2016 WL 2957133 at *1. The duty to preserve evidence "begins when litigation is pending or reasonably foreseeable." *Clear-View Techs., Inc. v. Rasnick*, No. 5:13-cv-02744-BLF, 2015 WL 2251005, at *1 (N.D. Cal. May 13, 2015). Jones testified that in January of 2014, on behalf of Bloomingkemper and Petrinovich, he met with Moua and Lee and warned them, "[T]his is going to be a lawsuit. So you've got to be careful." Dkt. No. 70-3 at 69-70. FEG's duty to preserve evidence therefore arose no later than January of 2014, when Jones, acting on behalf of Bloomingkemper and Petrinovich, warned Moua and Lee there would be a lawsuit. FEG concedes that its agents subsequently deleted discoverable text messages. Dkt. No. 74 at 6. Accordingly, the court is persuaded that FEG had an obligation to preserve text messages in the anticipation or conduct of litigation, that FEG took no reasonable steps to preserve text messages, and that those messages cannot be restored or replaced through additional discovery. *See* Fed. R. Civ. P. 37(e). The

undersigned therefore, upon a conclusion "that [FEG] acted with the intent to deprive [FFS] of the" use of the deleted text messages, would have discretion to issue an adverse-inference jury instruction against FEG. Fed. R. Civ. P. 37(e)(2).

FEG's counsel suggests the text-message deletions should be deemed "innocent" mistakes because its principals had already agreed in January of 2014 that "they should not communicate electronically regarding" possible legal claims. Dkt. No. 74 at 6. It is unclear why FEG's counsel believes this fact suggests an innocent intent; rather, an explicit agreement to avoid communicating electronically suggests a shared intent to keep incriminating facts out of evidence. Furthermore, the "spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case[] and . . . that such evidence was adverse to the party that destroyed it." *Samsung*, 888 F. Supp. 2d at 993. The undersigned infers that FEG's agents created incriminating text messages, realized the text messages would be discoverable, and, by deleting the text messages, acted improperly upon their shared intent to keep incriminating facts out of evidence. The alternative explanation described in the declarations of Jones, Petrinovich, and St. Clair— each one of them happened to have a habit of routinely deleting text messages, and each one of them was "ignoran[t]" of the fact that FEG might be sued, *see* Dkt. No. 74 at 10-13—seems unlikely. FEG has also failed to provide any evidence to explain why Bloomingkemper deleted text messages. The undersigned is therefore satisfied that FEG's agents acted with the intent to deprive FFS of the use of the deleted text messages.

The court shall remedy the spoliation by giving an adverse-inference jury instruction. The advisory committee noted when it most recently amended FRCP 37(e) that "[t]he remedy should fit the wrong" where, as here, the court concludes that intentional spoliation occurred—"severe measures" should not necessarily be employed when "lesser measures" would be "sufficient to redress the loss." FFS has been prejudiced by the spoliation of text messages; a key question in this case is whether FEG's principals intentionally encouraged Moua and Lee to lead their sales teams away from FFS, and the spoliated text messages might have provided direct proof that FEG's principals intended to recruit Moua, Lee, and their subordinates away from FFS. Still, it is not certain that the spoliated text messages contained, in fact, clear evidence as to the intentions of

6

1  FEG's principals. The undersigned therefore concludes that it would fairly redress the loss of the
2  text messages if the jury were instructed that it may, but need not, presume the spoliated text
3  messages were favorable to FFS in showing that FEG intended to recruit Moua, Lee, and their
4  subordinates away from FFS.[1]

5  B.    Spoliation of Phone Records

6  FEG failed to ensure the preservation of phone records that FEG's phone company,
7  Verizon, destroyed in the ordinary course of business, and FFS requests an adverse-inference
8  instruction as to those phone records. *See* Dkt. No. 70-2 at 38-39. Even assuming the phone
9  records were under the "control" of FEG, *see* FRCP 34(a)(1), the undersigned is nevertheless not
10 persuaded FFS was prejudiced by the spoliation of the phone records or that FEG intentionally
11 acted with an intent to deprive FFS of the use of the phone records, *see* Fed. R. Civ. P. 37(e); *cf.*
12 *Matthew*, 2016 WL 2957133 at *1-3. To the extent the phone records were stored electronically,
13 the undersigned is therefore not persuaded sanctions should be issued under FRCP 37(e).
14 Furthermore, the undersigned is not persuaded FEG bears a significant degree of fault for failing
15 to realize Verizon would destroy the phone records in the ordinary course of business; therefore, to
16 the extent the phone records were stored non-electronically, the undersigned is not persuaded it
17 would be appropriate to issue adverse-inference instructions pursuant to the court's inherent
18 authority to remedy the spoliation of non-electronic evidence. *See Samsung*, 888 F. Supp. 2d at
19 992-93 (spoliation sanctions need not be issued under a court's inherent authority when there is a
20 low "degree of fault" for spoliation and the spoliation has not caused significant prejudice) (citing
21 *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 161-62 (2d Cir. 2012)). Indeed,

---

[1] The court, with input from the parties, will finalize this adverse-inference instruction at the final pretrial conference pursuant to the procedures required by the undersigned's Standing Order re: Pretrial Preparation. Each side should submit a proposed instruction with its initial pretrial filings. The court contemplates that the finalized adverse-inference instruction shall be generally similar to the following: "When FEG reasonably anticipated that litigation might result if Gilles Moua, Mai Lee, and their subordinate agents left FFS and joined FEG, FEG was, under the law, required to preserve text messages possessed by its agents. The reason for this obligation was so that the text messages would be available for production to FFS during pretrial discovery. FEG's agents failed, however, to preserve their text messages. As a consequence of this failure, you may, but need not, presume that the deleted text messages contained information that would have helped FFS to prove FEG intentionally encouraged Gilles Moua, Mai Lee, and their subordinates to leave FFS and join FEG."

United States District Court
Northern District of California

7

1  the preservation letter sent by FFS's counsel describes a wide range of instructions for how FEG
2  should comply with its discovery obligations, but the letter does not advise FEG that its phone
3  carrier might destroy evidence if FEG does not promptly ask it to deviate from its ordinary
4  business practices. Dkt. No. 70-3 at 85-87. The undersigned is therefore not persuaded that it
5  would be proper under either FRCP 37(e) or the inherent authority of this court to sanction FEG
6  for the spoliation of phone records.

### C. Spoliation of Employment Applications

The undersigned is satisfied that individual employment-application documents have not been spoliated by FEG because FEG never received or generated any such documents. The employment application system described by Wordell is a sensible one that does not involve standalone employment-application documents: data related to a new applicant goes directly into a vendor database, and the data is not separately stored in an individual employment-application document. Dkt. No. 82-1 at 2-3. This credible explanation is not seriously called into question by any other facts before the court, and so the undersigned is persuaded that the individual employment applications sought by FFS simply do not exist. Accordingly, the court rejects the argument that FEG failed to preserve and produce individual employment applications received from former FFS sales contractors. Dkt. No. 70 at 15-17.

### D. Failure to Produce Native-Format Data

FEG has misled and prejudiced FFS in the course of FFS's attempts to discover native-format copies of electronically stored data that relates to the circumstances in which Moua, Lee, and their subordinates joined FEG.

The court twice ordered FEG to produce the native-format data sought by FFS: first, the court ordered FEG to "produce the discovery materials at issue in DDJR 1," Dkt. No. 62 at 2, which included native-format copies of responsive data that had been produced in non-native formats, *see* Dkt. No. 59 at 3-4; and, second, the court ruled in the interim order on this motion for sanctions that FFS was "entitle[d] . . . to receive a full native-format copy of the database, or full native-format copies of the databases, used to generate [a] spreadsheet" FEG had previously produced, Dkt. No. 91 at 1.

FEG failed to argue prior to the issuance of either order that FEG lacked possession, custody, or control over the native-format data requested by FFS. Instead, FEG conceded in DDJR 1 that it should have produced the discovery materials requested by FFS, and then expressed hope that a recent upgrade to a more modern "computer system" would likely allow FEG to "provide the requested information" soon. Dkt. No. 60 at 7. Then, in the brief opposing the sanctions motion, FEG argued it could not produce the native-format data because "it is a data base," Dkt. No. 74 at 3-4; this was no real argument, as a database is a native-format set of data that can be copied and produced. It was only after the court issued the interim order—the second order in this case which directed FEG to produce the native-format data—that FEG asserted, in Wordell's declaration, that it cannot produce the native-format data because it lacks possession, custody, and control over it. Dkt. No. 82-1 at 1.

FEG raises this argument far too late. FEG was obligated to object, within 30 days of being served with the request for production, that it lacked possession, custody, and control over the native-format data sought by FFS. *See* Fed. R. Civ. P. 34(b)(2)(A). FEG was served with the request for production on September 30, 2015, Dkt. No. 70 at 5, and yet FEG did not raise the argument that it lacks possession, custody, and control until July 8, 2016, Dkt. No. 82-1 at 1; by then, even though the court had extended fact discovery three times so that FEG would have more time to comply with its discovery obligations, fact discovery had already been closed for several weeks, Dkt. Nos. 57, 64, 77. The undersigned's Standing Order re: Civil Discovery also requires litigants to meet in person when they have discovery disputes, to attempt during that meeting to resolve their specific discovery disputes, and to file DDJRs to seek the judicial resolution of the disagreements the parties were unable to resolve when they met in person. The parties met in person to discuss their outstanding discovery disputes prior to the filing of DDJR 1, but FEG failed to raise the argument that it lacked possession, custody, and control of the data requested by FFS; instead, the parties "agreed to a production schedule" during the meeting, Dkt. No. 60 at 2, and FEG's portion of DDJR 1 merely concedes fault and expresses the "[h]ope" that it "will be able to provide the requested information" soon. Dkt. No. 60 at 7. FEG has therefore violated both FRCP 34(b)(2)(A) and the undersigned's Standing Order re: Civil Discovery Disputes by

9

waiting for nearly ten months to raise its new discovery argument for the first time. These procedural violations misled FFS, which had no fair opportunity to focus its discovery efforts on Greystar and Salestrackr before discovery closed. The court therefore rejects as procedurally improper the argument that FEG lacks possession, custody, and control of the native-format data it has failed to produce.

FEG forthrightly admits: (1) the court has authority "to impose sanctions" under the "points and authorities" asserted by FFS, Dkt. No. 74 at 7; (2) it is important to enforce compliance with the "[r]ules of [d]iscovery," Dkt. No. 87 at 3; and (3) FFS might have been misled by FEG, although at least "[n]ot [d]eliberately," *see id.* at 4. FEG argues, however, that any sanctions must be "reasonable and just," Dkt. No. 74 at 7, and that the issuance of sanctions related to the native-format data would be unjust for two independent reasons: (1) FEG failed to fulfill its discovery obligations with respect to the native-format data due to the "computer ignorance" of FEG's principals and FEG's counsel, but not due to any bad faith on their part, *see* Dkt. No. 87 at 5-6; and (2) the physical spreadsheet produced by FEG is a "complete[]" and accurate representation of the "information" pertinent to this case, and so a lack of access to the native-format data held by Greystar causes no meaningful prejudice to FFS, *id.* at 5.

FEG's first argument fails because the court does not need to find bad faith before it issues an adverse-inference instruction as a sanction. The court may, instead, issue such a sanction under FRCP 37(b)(2) if it concludes that "gross negligence" has resulted in a "failure to turn over" the native-format data. *See Karnazes*, 2010 WL 2672003, at *2-3 (awarding an adverse-inference jury instruction when plaintiff failed to facilitate the deposition of her treating physician). The undersigned is persuaded that the discovery misconduct detailed above—violating FRCP 34(b)(2)(A), violating the undersigned's Standing Order re: Civil Discovery Disputes, violating an order to produce the native-format data, and violating a subsequent order to either produce or else work with FFS to produce the native-format data—rises to the level of gross negligence. FEG's gross negligence resulted in a failure to turn over the native-format data, and so the court has discretion to issue an additional adverse-inference instruction as a sanction.

FEG's second argument fails because FFS has been substantially prejudiced by FEG's

misconduct. FFS is entitled to directly analyze pertinent native-format data it has duly requested in the course of discovery, because the direct inspection of native-format data and associated metadata would allow FFS to independently verify the accuracy of related discovery materials produced by FEG. In particular, the production of the database that FEG used to generate a physical spreadsheet would have given FFS a valuable opportunity to verify the accuracy of the highly relevant facts asserted in the spreadsheet. *See* Dkt. No. 74 at 3-4. The undersigned is mindful, however, of the fact that FEG's discovery misconduct is consistent with technological ignorance and is not necessarily the result of subjective bad faith. The undersigned is therefore persuaded it would be just to remedy the substantial prejudice FFS has suffered by giving a permissive adverse-inference jury instruction instead of a mandatory one.[2]

E.   Attorney Fees

FFS is entitled to the attorney fees and costs reasonably incurred in the course of bringing its sanctions motion and filing its supplemental briefing because FEG, by repeatedly failing to comply with discovery orders, caused FFS to incur these fees and expenses. Fed. R. Civ. P. 37(b)(2)(C). FEG's failures were not substantially justified and no other circumstances make an award of expenses unjust. *Id.*

**Conclusion**

The court is persuaded that FEG's agents deleted relevant text messages with the intent to deprive FFS of the use of those text messages, and the court therefore will give an adverse-inference jury instruction as a sanction. Fed. R. Civ. P. 37(e)(2)(B). The court is also persuaded, with respect to native-format data FEG was repeatedly ordered to produce and failed to produce,

---

[2] The court, with input from the parties, will finalize this adverse-inference instruction at the final pretrial conference pursuant to the procedures required by the undersigned's Standing Order re: Pretrial Preparation. Each side should submit a proposed instruction with its initial pretrial filings. The court contemplates that the finalized adverse-inference instruction related to the native-format data shall be generally similar to the following: "During pretrial discovery the court twice ordered FEG to produce electronically stored data concerning the circumstances under which Gilles Moua, Mai Lee, and their subordinates left FFS and joined FEG, but FEG did not produce the data and offered up a tardy, implausible excuse for not doing so. As a consequence, you may, but need not, infer the data would have shown: (1) that Gilles Moua, Mai Lee, and a large number of their subordinates enrolled with FEG beginning on May 10, 2014; and (2) that Moua and Lee's subordinates enrolled with FEG in the same hierarchical order they had at FFS, which preserved the flow of up-line and down-line payments for policy sales."

11

1   that FFS has been substantially prejudiced by FEG's discovery misconduct; the court therefore
2   will also give a second adverse-inference jury instruction as a sanction. Fed. R. Civ. P.
3   37(b)(2)(A). The adverse inferences will be permissive, not mandatory, because mandatory
4   inferences are not necessary to remedy the prejudice FFS has suffered. The court, with input from
5   the parties, will finalize the language of the adverse-inference jury instructions at the final pretrial
6   conference. Further, FFS is entitled to reasonable attorney fees and costs reasonably incurred in
7   the course of bringing its sanctions motion and filing its supplemental brief.[3] The court is not
8   persuaded the other sanctions requested by FFS would be appropriate.

**IT IS SO ORDERED.**

Dated: 10/7/2016

HOWARD R. LLOYD
United States Magistrate Judge

---

[3] FFS may file a noticed motion, with supporting evidence, seeking the fees and costs.