1  **SEDGWICK LLP**
   PAUL RIEHLE (State Bar No. 115199)
2  DENNIS MURPHY (State Bar No. 301008)
   333 Bush Street, 30th Floor
3  San Francisco, CA 94104
   Telephone:    415.781.7900
4  Facsimile:    415.781.2635
   paul.riehle@sedgwicklaw.com
5  dennis.murphy@sedgwicklaw.com

6  **SISCO & NARAMORE**
   KENNETH D. SISCO (State Bar No. 69814)
7  3574 Bluff Street
   Norco, CA 92860
8  Telephone: 714.265.7766
   skendbiz@gmail.com
9
   Attorneys for Defendant
10 FREEDOM EQUITY GROUP, LLC

11                UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                     SAN JOSE DIVISION

14

15

16 FIRST FINANCIAL SECURITY, INC., a        Case No.: 5:15-cv-01893-HRL
   Delaware corporation,
17                                          **DEFENDANT FREEDOM EQUITY**
                          Plaintiff,        **GROUP, LLC'S NOTICE OF MOTION**
18                                          **AND MOTION FOR NEW TRIAL**
              v.                            **PURSUANT TO FEDERAL RULES OF**
                                            **CIVIL PROCEDURE, RULE 59;**
19 FREEDOM EQUITY GROUP, LLC,               **MEMORANDUM OF POINTS AND**
   a California limited liability company,  **AUTHORITIES IN SUPPORT THERETO**
20
                          Defendant.        Date:      June 20, 2017
21                                          Time:      10:00 a.m.
                                            Ctrm:      2 – 5th Floor
22                                          Judge:     The Honorable Howard R. Lloyd

23

24

25

26

27

28

84740102v1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 20, 2017 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 2 of the above-entitled Court, located at the United States District Court, Northern District of California – San Jose Division, Robert F. Peckham Federal Building, 280 South 1st St., San Jose, CA 95113, Defendant Freedom Equity Group, LLC ("FEG") will move this Court for an Order for a new trial pursuant to Federal Rules of Civil Procedure ("FRCP"), Rule 59.

FEG's Motion for New Trial is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Paul Riehle and Proposed Order filed concurrently herewith, and such oral argument and documentary evidence as may be properly presented at the time of the hearing of this Motion.

Dated:  May 16, 2017                    SEDGWICK LLP


By:    _____/s/ Paul Riehle_____
       Paul Riehle
       Attorneys for Defendant
       FREEDOM EQUITY GROUP, LLC

# <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF ISSUES TO BE DECIDED ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................................1

I.      INTRODUCTION ....................................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..............................................................3

    A.      The Complaint Alleges Violation of California Law and Was Litigated under California Law .............................................................................................3

    B.      Pertinent Terms in the Parties' Contracts ..............................................................4

    C.      Plaintiff's Evidence on Liability for Interference with Contract ..........................5

    D.      Cross Examination of FEG's CEO Using the Deposition of Another Person ......................................................................................................................6

    E.      Evidence of Plaintiff's Damages ............................................................................8

    F.      Verdict and Judgment .............................................................................................9

III.    LEGAL STANDARD ..............................................................................................................9

IV.     LEGAL ARGUMENT ...........................................................................................................10

    A.      A New Trial Is Necessary to Prevent a Miscarriage of Justice ...........................10

        1.      The Covenants Not to Compete and Non-Solicitation Provisions Here Are Void and an Interference with Contract Claim Cannot Be Based on a Void Contract Term .......................................................10

        2.      Plaintiff Did Not Prove FEG Engaged in an Independently Wrongful Act as Is Required to Prove Interference with an At-Will Contract ......................................................................................14

        3.      The Business Justification Privilege Precludes Liability for Intentional Interference with Contract Here .........................................15

    B.      A New Trial Is Necessary to Prevent a Miscarriage of Justice Because of Misconduct of Counsel Unfairly Influencing the Verdict by Repeatedly Falsely Impeaching Defendant's CEO Using the Deposition Transcript of Another Person ...............................................................................................16

    C.      A New Trial Should Be Granted to Prevent a Miscarriage of Justice Based on the Insufficiency of the Evidence FEG Knew Plaintiff's Contracts Precluded Solicitation of Downline Agents ........................................18

    D.      The Jury's Verdict on Damages Is Based on Insufficient Evidence and Constitutes a Miscarriage of Justice .....................................................................19

V.      CONCLUSION ......................................................................................................................22

DEFENDANT FEG'S MOTION FOR NEW TRIAL                    CASE NO.: 5:15-cv-01893-HRL

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

## **CASES**

4

*Allied Chem. Corp. v. Daiflon, Inc.*
    449 U.S. 33 (1980) ................................................................................................. 10

5

*A-Mark Coin Co. v. General Mills, Inc.*
    148 Cal. App. 3d 312 (1983) ................................................................................ 13

6

7

*Blasé Industries Corp. v. Anorad Corp.*
    442 F.3d 235 (5th Cir. 2006) ............................................................................... 20

8

*Bosley Med. Grp. v. Abramson*
    161 Cal. App. 3d 284 (1984) ............................................................................... 11

9

10

*Charles C. Chapman Bldg. Co. v. Cal. Mart*
    2 Cal. App. 3d 846 (1969) ................................................................................... 16

11

*Citizens Bank v. Strumpf*
    516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) ................................... 21, 22

12

13

*Dowell v. Biosense Webster, Inc.*
    179 Cal. App. 4th 564 (2009) .............................................................................. 11

14

*DSPT Int'l, Inc. v. Nahum*
    624 F.3d 1213 (9th Cir. 2010) ............................................................................. 19

15

16

*Edwards v. Arthur Andersen LLP*
    44 Cal. 4th 937 (2008) .................................................................................... 10, 11

17

*Fields v. QSP, Inc.*
    Case No. CV 12-1238 CAS, 2012 U.S. Dist. LEXIS 78001
    (C.D. Cal. June 4, 2012) ...................................................................................... 11

18

19

*Hanson v. Shell Oil Co.*
    541 F.2d 1352 (9th Cir. 1976) ........................................................................ 19, 22

20

21

*Johnson v. Paradise Valley Unified Sch. Dist.*
    251 F.3d 1222 (9th Cir. 2001) ............................................................................. 21

22

*Kode v. Carlson*
    596 F.3d 608 (9th Cir. 2010) ............................................................................... 19

23

24

*Landes Constr. Co. v. Royal Bank of Canada*
    833 F.2d 1365 (9th Cir. 1987) ............................................................................. 10

25

*Latona v. Aetna U.S. Healthcare, Inc.*
    82 F. Supp. 2d 1089 (C.D. Cal. 1999) ................................................................ 12

26

*Loral Corp. v. Moyes*
    174 Cal. App. 3d 268 (1985) ............................................................................... 12

27

28

DEFENDANT FEG'S MOTION FOR NEW TRIAL            CASE NO.: 5:15-cv-01893-HRL

*Sedgwick* LLP

*Los Angeles Land Co. v. Brunswick Corp.*
    6 F.3d 1422 (9th Cir. 1993) ............................................................................... 16

*Merrick v. Paul Revere Life Ins. Co.*
    500 F.3d 1007 (9th Cir. 2007) ............................................................................. 22

*Metro Traffic Control, Inc. v. Shadow Traffic Network*
    22 Cal. App. 4th 853 (1994) ................................................................................. 12

*Miller v. City of L.A.*
    661 F.3d 1024 (9th Cir. 2011) ............................................................................. 18

*Mindenberg v. Carmel Film Productions, Inc.*
    132 Cal. App. 2d 598 (1955) ............................................................................... 13

*Molski v. M.J. Cable, Inc.*
    481 F.3d 724 (9th Cir. 2007) ............................................................................... 10

*Montgomery Ward & Co. v. Duncan*
    311 U.S. 243 (1940) ............................................................................................. 10

*Oracle Am., Inc. v. Google Inc.*
    No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 136172, 2011 WL 5914033
    (N.D. Cal. Nov. 28, 2011) .................................................................................... 21

*Passantino v. Johnson & Johnson Consumer Prods.*
    212 F.3d 493 (9th Cir. 2000) ............................................................................... 10

*Radware, Ltd. v. F5 Networks, Inc.*
    No. 13-cv-02024-RMW, 2016 U.S. Dist. LEXIS 18010 (N.D. Cal. Feb. 13, 2016) ......... 21

*Reeves v. Hanlon*
    33 Cal. 4th 1140 (2004) ................................................................................. 14, 15

*Remel v. State Farm Fire & Cas. Co.*
    Case No. 1:07cv126-LTS, 2009 U.S. Dist. LEXIS 21649 (S.D. Miss. Mar 3, 2009) ......... 17

*Renaissance Realty, Inc. v. Soriano*
    120 Cal. App. 3d Supp. 13 (1981) ....................................................................... 13

*Scott v. Snelling and Snelling, Inc.*
    732 F. Supp. 1034 (N.D. Cal. 1990) .................................................................... 11

*Shaw v. Lindheim*
    809 F. Supp. 1393 (C.D. Cal. 1992) .................................................................... 19

*Studley v. Boylston Nat. Bank*
    229 U.S. 523, 57 L. Ed. 1313, 33 S. Ct. 806 (1913) .......................................... 21

*The Retirement Group v. Galante*
    176 Cal. App. 4th 1226 (2009) ............................................................................ 11

*Therasense, Inc. v. Becton, Dickinson & Co.*
    No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 124780, 2008 WL 2323856 (N.D.
    Cal. May 22, 2008) .............................................................................................. 21

Sedgwick LLP

*Tuttle v. Combined Ins. Co.*
    222 F.R.D. 424  (E.D. Cal. 2004)..................................................................................... 18

*United States ex rel. HCI Sys. v. Agbayani Constr. Co.*
    Case No. 14-cv-02503-MEJ, 2014 U.S. Dist. LEXIS 107791, (N.D. Cal. Aug. 5,
    2014)................................................................................................................................. 3

*Venegas v. Wagner*
    831 F.2d 1514 (9th Cir. 1987)......................................................................................... 19

*Woodard v. City of Menlo Park*
    No. C 09-3331 SBA, 2013 U.S. Dist. LEXIS 147012 (N.D. Cal. Sep. 30, 2013) ........ 17, 18

### **STATUTES**

California Business & Professions Code
    § 16600 .................................................................................................................... passim
    § 16601 ...................................................................................................................... 11, 12
    § 16602 ............................................................................................................................ 11
    § 16602.5 ......................................................................................................................... 11
    § 17200 .............................................................................................................................. 4
    § 17200, *et seq* ................................................................................................................... 3

Federal Rules of Civil Procedure
    Rule 50 ............................................................................................................................ 22
    Rule 59 ................................................................................................................... 9, 19, 22
    Rule 59(a)(1)(A) .............................................................................................................. 10

Local Rule 11-4(a)(1) ........................................................................................................... 18

Rules of Professional Conduct
    Rule 5-200 ....................................................................................................................... 18
    Rule 5-200(A), (C) .......................................................................................................... 18

### **OTHER AUTHORITIES**

Califorrnia Civil Jury Instruction 352 ................................................................................. 20

*Restatement (Second) of Torts § 766*................................................................................... 13

*Restatement (Second) of Torts § 768*.............................................................................. 15, 16

*Restatement (Second) of Torts 2d § 1*................................................................................. 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sedgwick

**STATEMENT OF ISSUES TO BE DECIDED**

Whether a new trial is necessary to prevent a miscarriage of justice because:

1.      The covenants not to compete and non-solicitation provisions are void and an interference with contract claim cannot be based on a void contract term.

2.      Plaintiff did not prove FEG engaged in an independently wrongful act as is required to prove interference with an at-will contract.

3.      The business justification privilege precludes liability for intentional interference with contract.

4.      Misconduct of counsel unfairly influenced the verdict by repeatedly falsely impeaching Defendant's Chief Executive Officer ("CEO") using the deposition transcript of another person.

5.      There is insufficient evidence to show FEG knew that Plaintiff's contracts precluded solicitation of downline agents.

6.      The jury's verdict on damages is based on insufficient evidence.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiff's lawsuit is based on non-competitive covenants that violate California's broad public policies in favor of worker mobility and the promotion of legitimate competition.  These policies are implicated in three ways, each of which would result in a miscarriage of justice if not recognized.  To honor these policies, this Court should grant a new trial.

First, California Business & Professions Code Section 16600 provides "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void" (except under circumstances that are not present here).  Of course, there can be no interference claim as to a void contract term.

Second, California case law holds an independently wrongful act is required to prove interference with an at-will contract.  Here, Freedom Financial Security, Inc.'s ("FFS") contracts provide the Sales Contractors can terminate without cause and there was no evidence at trial of any independently unlawful act.

- 1 -

DEFENDANT FEG'S MOTION FOR NEW TRIAL                    CASE NO.: 5:15-cv-01893-HRL

Third, California law recognizes the privilege of competition as a defense against a claim of interference with contract.  The evidence at trial showed FEG's conduct here falls squarely within the scope of the business justification privilege.

A new trial is also warranted based on the misconduct of counsel, who misrepresented the evidence by claiming FEG's CEO was impeached by his deposition testimony.  In fact, the testimony was that of another person with the result that FEG's CEO was falsely shown to be a liar three times, at the very beginning of his cross-examination, in the middle, and the very end.

In addition, one of the elements of an interference claim is knowledge of the term of the contract at issue.  Here, there was no evidence FEG knew FFS's contract precluded solicitation of downline agents.  And no inference supporting such knowledge could be drawn based on FEG's agreement, as it expressly exempts downline agents from the prohibition on solicitation.

Finally, the damage award is speculative and not supported by the evidence.  As an initial matter, the at-will nature of the contractor agreements means that any damages would not be reasonably certain.  That is especially so here where the testimony was that Mr. Moua reached out to FEG and other similar companies because of his dissatisfaction with the interference by FFS CEO Gerlicher regarding the promotion of Thai Thao.

Moreover, Plaintiff's expert relied on records and calculations that were never admitted into evidence.  Indeed, no witness at trial testified about the evidentiary content of those records.  Also undermining the expert's opinion is the fact that he did not testify about what increased expenses FFS would have incurred if 2,921 more people attended its conventions.  Plaintiff kept renewals of over 10 million dollars ($10,000,000.00) that Mr. Moua was to have received.  There is no substantial evidence supporting the damages award.

For these reasons, explained more fully below, FEG respectfully requests the Court grant a new trial.

///
///
///
///

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Complaint Alleges Violation of California Law and Was Litigated under California Law

This lawsuit was filed April 28, 2015.  The Complaint alleges that venue is proper in this district "because FEG resides in the Northern District of California and a substantial part of the events giving rise to this claim occurred in the Northern District of California."  Complaint, Dkt. No. 1, ¶ 6.  It alleges intradistrict assignment in the San Jose Division "because a substantial part of the events giving rise to the claims alleged occurred in Santa Clara County, California."  *Id.* ¶ 7.

The Complaint further alleges:

- "Defendant, through the offices in this District, conducts extensive business in this District and throughout California;"

- "Defendant's website directs potential customers and insurance sales agents to its office in San Jose; Defendant's agent for service of process is located in San Jose;"

- "[O]ne of Defendant's two principals, Ronald Petrinovich, resides in this District and works out of Defendant's San Jose office;" and

- Mr. Petrinovich, working through Defendant's San Jose office and on behalf of Defendant, was intimately involved in, and directed, the events alleged below."

*Id.* ¶ 5.

The Complaint asserts two causes of action: intentional interference with contractual relations; and violation of California Business & Professions Code, Section 17200, *et seq.* ("California UCL").  Plaintiff's California UCL claim is predicated on "[i]ntentional interference with the performance of a pre-existing contract that the (sic) had knowledge of;" "[i]intentionally and wrongfully inducing the breach of contract;" and "[c]ompeting against FFS by poaching an entire sales team that FFS itself assembled."  Complaint ¶ 106.

At all times, the parties have litigated Plaintiff's claims under California law.  *See, e.g.*, Plaintiff's Opposition to Motion to Dismiss, Dkt. No. 14, p. 4 (citing *United States ex rel. HCI Sys. v. Agbayani Constr. Co.*, Case No. 14-cv-02503-MEJ, 2014 U.S. Dist. LEXIS 107791 (N.D. Cal. Aug. 5, 2014) for the elements of an interference with contract claim under California law

Sedgwick LLP

and elements of California Business & Professions Code Section 17200 claim); Jointly Submitted Proposed Jury Instructions (With Alternatives), Dkt. No. 91 (proposing Judicial Council of California Civil Jury Instructions, CACI).   The Court likewise has applied California law to Plaintiff's claims. *See, e.g.*, Order Denying Motion to Dismiss, Dkt. No. 29, p. 2; Jury Instructions, Dkt. No. 135.

### B.   Pertinent Terms in the Parties' Contracts

Plaintiff's Sales Contractor Agreement's Terms and Conditions contain several "Covenants" under Section C.  Section C.2., entitled "Customer Non-Replacement," states in part:

> Sales Contractor covenants that he/she will not, at any time during the term of this Agreement, *and for a period of two (2) years thereafter, directly or indirectly, individually or in concert with another, induce or attempt to induce any Customer to terminate, reduce coverage under or replace any of the Products and Services that have been sold by Sales Contractor or his/her Downline Sales Contractors.*  In this Section C, the term "Customer" shall be limited during the two (2) year period after the Termination of this Agreement to those Customers i) to whom Sales Contractors or his/her Downline Sales Contractors sold Products and Services; and ii) who reside, at the time of the inducement or attempted inducement, in the geographical area within fifty (50) miles of the location of Sales Contractor's office(s) during the eighteen (18) month period preceding Termination of this Agreement.

Trial Ex. 1, p. 3 (emphasis added).

Section C.3., entitled "Sales Contractor Non-Recruitment," states in part:

> Sales Contractor covenants that he/she will not, at any time during the term of this Agreement, *and for a period of two (2) years thereafter*, directly or indirectly: i) *induce or attempt to induce any person who is contractually affiliated with FFS as a Sales Contractor or in other capacity, or any member of FFS's administrative staff, to terminate their relationship with FFS*; or ii) *hire, induce or attempt to hire and induce any such persons to sell or solicit products and services that are competitive with the Products and Services for any person or entity other than FFS.* Sales Contractor's covenants in the preceding sentence are limited and only apply with respect to any person that resided in or engaged in business activities in the geographic area within fifty (50) miles of the location of Sales Contractor's office(s) during the eighteen (18) month period preceding termination of this Agreement.

*Id.*, pp. 3-4 (emphasis added).

The FFS agreement, Section X, "Termination," provides for "termination by Sales Contractor at any time, without any reason or any cause, effective upon the delivery of written

1  notice to FFS." *Id.*, p. 10.   The agreement runs fifteen (15) independent clauses, a number of

2  which are very broadly worded, regarding cause for termination of the agreement by FFS. *Id.*

3        The FEG provision on non-solicitation provides in pertinent part at Section 5. F. III:

4

5      An agent at any time during the term of this Agreement, and for a
    period of two (2) years thereafter, is prohibited from directly or

6      indirectly induce (sic) or attempt (sic) to induce any person who is
    contractually affiliated with FEG LLC to terminate their relationship

7      with FEG LLC, *<u>unless that person is in his/her downline</u>*.

8  Trial Exhibit 202, p. 3 (emphasis added).

9        **C.**    <u>**Plaintiff's Evidence on Liability for Interference with Contract**</u>

10        At trial, Plaintiff's "three key pieces of evidence" supporting its claim for interference

11  were: (1) Mike Jones drafted the resignation letter for Mr. Moua on May 9, 2014, the day before

12  Mr. Moua and his team left First Financial Security; (2) the WWW.FEGBUILDERS.COM

13  website was registered on May 2, 2014, eight days before Mr. Moua's team left First Financial

14  Security; and (3) Mr. Moua was linked directly to FEG as opposed to having a recruiter and Mr.

15  Petrinovich testified that sort of arrangement has to be made in advance.  RT 755:6-756:23.  In

16  addition, Plaintiff's counsel also argued that FEG did the following:   Mr. Jones provided

17  customized non-solicitation forms used by Mr. Moua's team (RT 760:14-761:5); FEG waived its

18  enrollment fee (RT 763:8-21);[1] Mr. Bloomingkemper called Mr. Moua two or three years before a

19  convention in 2016 and asked "how would you feel if at the end of the year I asked, you made $3

20  million and I asked you to give 2 million of it back" (RT 827:12-16); and FEG personnel met with

21  Mr. Moua in Texas and discussed FEG's compensation plan (RT 828:14-20).

22        Plaintiff's counsel also argued that, based on the failure to preserve text messages, the jury

23  could infer that FEG "intentionally encouraged Mr. Moua, Ms. Lee and their down-line team to

24  leave First Financial and join FEG."  RT 764:8-13.

25        Most of the other actions cited by Plaintiff were undertaken by Mr. Moua and members of

26  his team: Mr. Moua's team came to FEG hierarchically (RT 766:2-8); when he first joined FEG in

27

28  [1] This discussion of Plaintiff's evidence is based on what Plaintiff's counsel contended and is not
meant to concede disputed facts or that Plaintiff's counsel accurately stated the evidence.

Sedgwick

1    May 2014, Mr. Moua asked his team to believe in him and to commit to FEG (RT 767:8-10); the

2    meeting at Mr. Moua's house was orchestrated (RT 824:14-17); in order to enter Mr. Moua's

3    house, his team members had to sign the form (RT 102:16-17); Mr. Moua presented a PowerPoint

4    at his house the day he resigned with slides that included the FEG logo (RT 767:16-21); Mr.

5    Moua's leaders set up laptops in the basement and enrolled team members in FEG after they

6    resigned from FFS (RT 103:5-8).

7    **D.    Cross Examination of FEG's CEO Using the Deposition of Another Person**

8         On three occasions, Plaintiff's attorney ostensibly impeached FEG's CEO for truthfulness

9    using the testimony of another person (Mr. Bloomingkemper).  The first two times Plaintiff's

10   attorney leads with the exact question from the deposition.  Since the testimony is not his own,

11   Mr. Petrinovich either denies or did not remember so testifying.  Plaintiff's attorney then read the

12   testimony to "demonstrate" that Mr. Petrinovich is a liar.

13        The first set of questions on cross-examination relates to a contested fact about agent fees

14   that Mr. Petrinovich's testimony was key evidence at trial.

15        Q.    When was the decision made to charge the fee?

16        A.    I think I just said I don't recall all the dates, it's something that we
             talked about for several years that I was a proponent of.

17

18        Q.    So you don't remember, even though you have been fighting for it
             for several years, whether it was put into place?

19        A.    No, sir. [RT 697:9-15]

20        The immediately next set of questions is direct impeachment for truthfulness using word

21   for word the testimony from another witness about whether that witness deletes all his emails.

22        Q.    Did you testify at deposition that you delete everything after you
             read it?

23        A.    No, I don't believe I did, but I don't.

24        So your testimony April 15th was:

25        "Question:  When you get an e-mail, do you do anything to the e-
             mail, do you forward it to somebody, do you put it in electronic

26        folder on your computer, do you just leave it in your in once after
             you are done reading it?

27

28        "Answer:  I delete everything after I'm done reading it."

DEFENDANT FEG'S MOTION FOR NEW TRIAL                    CASE NO.: 5:15-cv-01893-HRL

1   RT 697:16-25.

2          The second time misusing the evidence, Plaintiff's attorney dragooned Mr. Petrinovich and

3   then used the same gambit, this time about what the witness did with documents.

4          Q.      And isn't it true that during your deposition, you testified that you
                    turned everything over to Mike Jones?
5
           A.      What I did –
6
           Q.      What did you testify, did you testify that you turned everything over
7                   to Mike Jones?

8          A.      What do you mean when you say "everything?"

9          Q.      Well, I can actually just quote the testimony, if you prefer.

10                 "Question:  Well, did you ever communicate with anybody on this
                    issue, no e-mails whatsoever?
11
                    "Answer:  I turned everything over to Mike Jones and he does that."
12

13   RT 702:5-16.

14         The third time arose in the context of why Mr. Petrinovich's computer evidence was not

15   available, a subject about which the Court gave an adverse inference.   The impeachment was

16   based on Mr. Petrinovich denying he recycled his computer.   Plaintiff's attorney concluded his

17   cross-examination with a long passage ending with the impeachment that the computer had been

18   recycled.

19         A.      I took my computer, I just said a little while earlier, I took it
                    to a computer store.  I actually had my assistant Michael take
20                  it to a computer store and they said it was toast.  They said it
                    was gone.
21
           Q.      You actually testified that you had dropped it off earlier that
22                  day for recycling; isn't that right?

23         A.      No.  Not that I recall.

24         Q.      You also were asked whether you had taken any efforts to
                    have the data retrieved, correct?
25
           A.      I took it to the computer store to try to get it fixed and they
26                  couldn't.  That's my answer.

27         Q.      That was the Geek Squad, right?

28         A.      I don't know where Michael took it.

Q.   So the question is:

"Question:  Okay.  Why didn't you bring those today."

These are the e-mails we were just talking about today.

"Answer:  my computer, last flight I took crashed, so I took it to Geek Squad and they said they couldn't fix it.  So they do whatever they do with it.

"Answer:  I signed something where they could properly take care of it, whatever they do."

And it goes on.

"Question:  Do you have the document you signed?

"Answer:  The what?

"Question:  The document you signed giving them authorization to recycle?

"Answer:  No, but I could get it for you today, yeah.

"Question:  Okay.  When you went to get it, when did that happen, roughly?

"Answer:  This morning, they recycled it."

RT 704:2-705:8.  Without asking another question, Plaintiff's attorney sat down after reading the other person's deposition testimony.

In sum, Plaintiff's attorney misstated the evidence in the first, middle and last portions of his cross examination of Defendant FEG's CEO.

**E.    Evidence of Plaintiff's Damages**

Nathan Caine, the Manager of the Commissions Department at Plaintiff, testified that FFS archives its commission statements and tracks every chargeback and commission paid out for each carrier.   RT 285:15-17.    Mr. Caine provided Plaintiff's damages expert with "all of our commission records, all of our historical data."  RT 286:19-21.

Meg Jones, President of Plaintiff FFS, testified that a chargeback occurs if a customer cancels a policy before payment and the insurer has already advanced commission for the policy. RT 125:7-20.  After Mr. Moua and his team left, FFS "had a large number of chargebacks in the early months, and ongoing."  RT 157:6-15.

No percipient witness testified about convention fees or even that Plaintiff's expert had been provided with documentation with respect to convention revenue or expenses.  Plaintiff's damages expert testified that he "looked at convention revenue."  RT 295:7-9.  He used the fee of $100 for attending a convention and multiplied the fee by 2,921, the number of Mr. Moua's team that the expert estimated would have attended Plaintiff's conventions in 2015, to conclude that Plaintiff suffered convention fee damages of $292,000.  RT 308:8-310:14.  He did not testify about what increased expenses FFS would have incurred if 2,921 more people attended its conventions.

Ms. Jones testified that for policies that pay renewals, its agents receive renewals as long as the policy stays in force and they have not breached their sales contract.  RT 126:10-18.  If they breach their sales agreement, then the agents do not receive their renewal commissions.  RT 140:20-141:19.  Seventy-five percent (75%) of a renewal commission is paid to the agent and twenty-five percent (25%) to FFS.  RT 124:16-125:6.

Phil Gerlicher, CEO of Plaintiff FFS, testified that in 2013, Mr. Moua's last full year at FFS, Mr. Moua earned "just short of $1.7 million" in commissions.  RT 262:12-14.  Michael Jones, an actuary, testified that according to actuarial statistics, FFS received over $10 million in renewal commissions as a result of Mr. Moua leaving FFS.  RT 639:21-22, 649:23-652:7, 658:17-659:8.

### F.  Verdict and Judgment

Beginning on April 10, 2017, this Court held a seven-day jury trial, which concluded on April 18, 2017.  RT 904.  The jury returned a verdict that same day (Dkt. No. 133), and this Court signed a Judgment in the amount of one million two hundred thousand dollars ($1,200,000.00) against FEG also on April 18, 2017.  Dkt. No. 134.

## III.  LEGAL STANDARD

FRCP, Rule 59 states that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  FRCP, Rule 59(a)(1)(A).  A "motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the

weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (same).

"The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510, n.15 (9th Cir. 2000). In deciding a motion for new trial, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). Further, "[t]he authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

## IV. LEGAL ARGUMENT

### A. A New Trial Is Necessary to Prevent a Miscarriage of Justice

#### 1. The Covenants Not to Compete and Non-Solicitation Provisions Here Are Void and an Interference with Contract Claim Cannot Be Based on a Void Contract Term

California Business & Professions Code ("B&P") Section 16600 states, "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." As detailed below, the non-compete and non-solicitation contract provisions at issue here are void under Section 16600 and void contract provisions cannot form the basis for an interference claim.

The leading case on B&P Code Section 16600 is *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008). In *Edwards*, the defendant's non-compete clauses prohibited employees for an eighteen (18) month period following termination from performing services of the same type while employed by the defendant for any client that employees had worked for during the eighteen (18) months prior to their termination. *Id.* at 942. Former employees also could not solicit any

Sedgwick LLP

1   client of the defendant's offices where they used to work for one year after termination.  *Id.*  The

2   California Supreme Court held these provisions were invalid because they restrained the plaintiff's

3   ability to practice his profession.  *Id.* at 948.[2]  "[W]e are of the view that California courts 'have

4   been clear in their expression that section 16600 represents a strong public policy of the state

5   which should not be diluted by judicial fiat."  *Id.* at 950-51 (citing *Scott v. Snelling and Snelling,*

6   *Inc.*, 732 F. Supp. 1034, 1042 (N.D. Cal. 1990)).

7       Before and after *Edwards*, covenants not to compete or non-solicitation contract provisions

8   have been held to be void under California law where the exceptions enumerated in the Business

9   & Professions Code do not apply, as here.[3]  *See, e.g., Dowell v. Biosense Webster, Inc.*, 179 Cal.

10  App. 4th 564, 575 (2009) ("it is clear that the noncompete and nonsolicitation clauses in the

11  agreements with [the plaintiffs] are void and unenforceable under section 16600"); *Fields v. QSP,*

12  *Inc.*, Case No. CV 12-1238 CAS, 2012 U.S. Dist. LEXIS 78001, at *27 (C.D. Cal. June 4, 2012)

13  (non-compete and non-solicitation are "*per se* unlawful under California law regardless of the

14  reasonableness of the covenant" (citing *Edwards*, 44 Cal. 4th at 946-47)); *The Retirement Group*

15  *v. Galante*, 176 Cal. App. 4th 1226, 1231, n. 5, 1241-42 (2009) (reversing injunction on grounds

16  that the non-solicitation provision in an independent contractor agreement violated Section

17  16600); *Bosley Med. Grp. v. Abramson,* 161 Cal. App. 3d 284, 288 (1984) ("an agreement by an

18  employee or independent contractor not to compete with his employer after leaving that

19  employment is void.").

20      Although the non-solicitation provisions of the above cases involved non-solicitation of

21  customers, the rationale of those decisions applies with full force to the non-solicitation of other

22  Sales Contractors in Plaintiff's agreements.  As a practical matter, that is how FFS and FEG

---

23  [2] The Supreme Court expressly rejected a "narrow restraint" exception, ruling: "Section 16600 is

24  unambiguous, and if the Legislature intended the statute to apply only to restraints that were
    unreasonable or overbroad, it could have included language to that effect.  We reject [the

25  defendant's] contention that we should adopt a narrow-restraint exception to section 16600 and
    leave it to the Legislature, if it chooses, either to relax the statutory restrictions or adopt additional

26  exceptions to the prohibition-against-restraint rule under section 16600."  *Id.* at 950.

27  [3] The exceptions to B&P Code Section 16600 are for the sale of goodwill of a business or selling
    ownership interest in business (*id.* at § 16601), dissolution of partnership (*id.* at § 16602), and

28  dissolution of limited liability company (*id.* at § 16602.5).  None of those exceptions apply here.

Sedgwick LLP

84740102v1

DEFENDANT FEG'S MOTION FOR NEW TRIAL          CASE NO.: 5:15-cv-01893-HRL

compete.  This case is analogous to *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853 (1994).  There, similar to here, the restrictive covenant included "soliciting Affiliates (as defined in Section 10.2 below) to enter into any contract or arrangement with any person or organization to provide traffic report gathering or broadcast services."  *Id.* at 856, n. 1.  The Court of Appeal ruled:

> Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated, unless necessary to protect the employer's trade secrets.  [Citation omitted].  The corollary to this proposition is that competitors may solicit another's employees if they do not use unlawful means or engage in acts of unfair competition.

*Id.* at 859.  The appellate court affirmed the denial of plaintiff's motion for a preliminary injunction.

In *Latona v. Aetna U.S. Healthcare, Inc.*, 82 F. Supp. 2d 1089 (C.D. Cal. 1999), the "'anti-solicitation clause'" provision precluded solicitation of "any entity or individual who was an Aetna employee, customer or provider of health care services to Aetna within the year prior to leaving the company."  *Id.* at 1092.  The court ruled "the non-solicitation clause alone would preclude plaintiff from engaging in conduct protected by section 16600."  *Id.* at 1096.[4]

Here, too, the Terms and Conditions of Plaintiff's Sales Contractor Agreement that discuss non-replacement, non-recruitment, and non-solicitation violate B&P Section 16600.  *See* Trial Ex.

---

[4]  Defendant expects that Plaintiff may argue that the non-solicitation provisions are not void under Section 16600 based on *Loral Corp. v. Moyes,* 174 Cal. App. 3d 268 (1985).  *Loral* is inapposite, as it involves a post-employment separation where, in exchange for substantial severance benefits, including payment for reselling shares of plaintiff Loral Corporation's stock, defendant agreed not to "disrupt, damage, impair or interfere with the business of [the plaintiffs] whether by way of interfering with or raiding its employees, disrupting its relationships with customers, agents, representatives or vendors or otherwise."  174 Cal. App. 3d at 274.  The consideration in *Loral Corp.* is similar to the exception permitting a non-competitive covenant in the sale of an ownership interest in a business.  *See* Business & Professions Code § 16601.  Moreover, relevant here, the court noted (a) the impact of the covenant was limited: "All they lose is the option of being contacted by [defendant] first" (*Loral*, 174 Cal. App. 3d at 279); and (b) it was "problematical what sort of conduct will be regarded as tortious interference with contractual relations, because there is a privilege of competition" (*id.* at 277, n. 4).  As to the latter, *see infra* Section IV.A.3, at pp. 15-16.

- 12 -

1, pp. 3-4.  Section C.2. covenants that a Sales Contractor "will not, at any time during the term of this Agreement, *and for a period of two (2) years thereafter*, directly or indirectly, individually or in concert with another, induce or attempt to induce any Customer to terminate, reduce coverage under or replace any of the Products and Services that have been sold by Sales Contractor or his/her Downline Sales Contractors." Trial Ex. 1, p. 3 (emphasis added).  Section C.3. covenants that a Sales Contractor "will not, at any time during the term of this Agreement, *and for a period of two (2) years thereafter*, directly or indirectly: i) induce or attempt to induce any person who is contractually affiliated with FFS as a Sales Contractor or in other capacity, or any member of FFS's administrative staff, to terminate their relationship with FFS; or ii) hire, induce or attempt to hire and induce any such persons to sell or solicit products and services that are competitive with the Products and Services for any person or entity other than FFS." Trial Ex. 1, pp. 3-4 (emphasis added).

It is axiomatic that an intentional interference with contract claim cannot be based on a void contract term.  In *A-Mark Coin Co. v. General Mills, Inc.*, 148 Cal. App. 3d 312 (1983), for example, after affirming the trial court's ruling that no valid contract existed, the Court of Appeal also naturally affirmed the ruling that there could be no claim for interference with contract: "No rights are enforceable under a void contract.  [Internal citations omitted]  The trial court properly held that [the plaintiff] could not posit liability for tortious interference with a contractual relationship upon a void contract." *Id.* at 322 (citing *Renaissance Realty, Inc. v. Soriano*, 120 Cal. App. 3d Supp. 13, 17-18 (1981) ("fraudulently conceived contractual relationship cannot be the basis of the tort of interference with a contractual relationship"); *Mindenberg v. Carmel Film Productions, Inc.*, 132 Cal. App. 2d 598, 602 (1955) (no interference claim regarding corporation's contract to purchase shares of its stock where contract unlawful on grounds of public policy).  *See also* Comment f to *Restatement of Torts 2d*, section 766, Intentional Interference with Performance of Contract by Third Person ("The word 'contract' connotes a promise creating a duty recognized by law.  (See *Restatement Second,* Contracts § 1.) The particular agreement must be in force and effect at the time of the breach that the actor has caused; and if for any reason it is entirely void, there is no liability for causing its breach.").

FEG respectfully submits that a new trial should be granted because an interference with contract claim cannot be premised on non-compete and non-solicitation contract terms that are void under B&P Code section 16600.

> **2.      Plaintiff Did Not Prove FEG Engaged in an Independently Wrongful Act as Is Required to Prove Interference with an At-Will Contract**

In *Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004), the California Supreme Court addressed competition in suits involving causes of action for interference with at-will employment relations. The Court held as follows:

> *Where no unlawful methods are used, public policy generally supports a competitor's right to offer more pay or better terms to another's employee, so long as the employee is free to leave.*  As Judge Learned Hand observed long ago, if the law were to the contrary, the result "would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay.  It would put an end to any kind of competition."  Or as *Diodes* put it: "The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change."

*Id.* at 1151 (emphasis added; internal citations omitted; brackets in original).

The Court then distinguished "the economic relationship between parties to contracts that are terminable at will" from the relationship between parties of other binding agreements:

> [A]s the Restatement Second of Torts explains, *if a party to a contract with the plaintiff is free to terminate the contractual relation when he chooses, "there is still a subsisting contract relation; but any interference with it that induces its termination is primarily an interference with the future relation between the parties*, and the plaintiff has no legal assurance of them.  As for the future hopes he has no legal right but only an expectancy; and when the contract is terminated by the choice of [a contracting party] there is no breach of it.  *The competitor is therefore free, for his own competitive advantage, to obtain the future benefits for himself by causing the termination.* Thus, he may offer better contract terms, as by offering an employee of the plaintiff more money to work for him or by offering a seller higher prices for goods, and *he may make use of persuasion or other suitable means, all without liability*." (*Rest.2d Torts, § 768, com. i.*).

84740102v1

Sedgwick LLP

1   *Id.* at 1151-52 (emphasis added; brackets in original).  The Court then ruled that "an interference

2   with an at-will contract properly is viewed as an interference with a prospective economic

3   advantage" (*id.* at 1152) and held "the same California standard applicable to claims for

4   intentional interference with prospective economic advantage" applied:

> *[A] plaintiff must plead and prove that the defendant engaged in an independently wrongful act—i.e., an act "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard"* (*Korea Supply, supra*, 29 Cal.4th at p. 1159)—that induced an at-will employee to leave the plaintiff.

8   *Id.* at 1152-53 (emphasis added).

9       In *Reeves,* the requirement of an independent wrongful act was satisfied because the

10  defendants engaged in unlawful acts, including breaching their fiduciary duties by abruptly

11  resigning from the plaintiff law firm without providing case lists or status reports or deadlines,

12  deleting and destroying plaintiffs' computer files containing client documents, and

13  misappropriating confidential information.  *Id.* at 1154-55.

14      Here, FFS Sales Contractors could terminate their agreements with FFS without cause

15  (Trial Ex. 1, Section X, p. 10) and there was no evidence of any unlawful act by Defendant FEG.

16  Neither writing a resignation letter, nor creating a registration website, nor recruiting, nor

17  discussing compensation is actionable.  Although the Complaint alleges that Mr. Moua and Ms.

18  Lee took confidential information from FFS (Complaint, Dkt. No. 1, ¶ 52-54), there was no proof

19  at trial supporting this claim nor that FEG ever received any confidential information.

20  Accordingly, FEG respectfully requests a new trial as to Plaintiff's claim for interference with

21  contract.

22          **3.     The Business Justification Privilege Precludes Liability for Intentional
                      Interference with Contract Here**

24      The business justification privilege applies to alleged interference with contracts claims:

25  "(1) One is privileged purposely to cause a third person not to enter into or continue a business

26  relation with a competitor of the actor if (a) the relation concerns a matter involved in the

27  competition between the actor and the competitor, and (b) the actor does not employ improper

28  means, and (c) the actor does not intend thereby to create or continue an illegal restraint of

**Sedgwick**LLP

84740102v1

- 15 -

DEFENDANT FEG'S MOTION FOR NEW TRIAL                    CASE NO.: 5:15-cv-01893-HRL

1   competition, and (d) the actor's purpose is at least in part to advance his interest in his competition

2   with the other." *Charles C. Chapman Bldg. Co. v. Cal. Mart*, 2 Cal. App. 3d 846, 855-56 (1969)

3   (quoting Restatement of Torts, § 768). *See also Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d

4   1422, 1431 (9th Cir. 1993) (same).[5]

5         FEG's conduct here falls squarely within the scope of the business justification privilege:

6   (a) Plaintiff FFS and Defendant FEG plainly are competitors who compete with one another

7   through sales agents and teams of sales agents; (b) as discussed in the preceding section, FEG did

8   not use improper means; (c) there is no evidence that FEG intended to create or continue an illegal

9   restraint on competition (nor was there any evidence of an illegal restraint on competition); and

10  FEG's purpose was to advance its interest in competing for the sale of insurance policies.

11       **B.**    **<u>A New Trial Is Necessary to Prevent a Miscarriage of Justice Because of</u>**
    **<u>Misconduct of Counsel Unfairly Influencing the Verdict by Repeatedly Falsely</u>**
12  **<u>Impeaching Defendant's CEO Using the Deposition Transcript of Another</u>**
    **<u>Person</u>**
13

14        The standard for granting a new trial based on attorney misconduct was recently

15  summarized as follows:

16       Attorney misconduct during the course of trial may warrant a new trial where such
         conduct substantially interfered with the moving party's interest. The flavor of the
17       misconduct must sufficiently permeate an entire proceeding to provide conviction
         that the jury was influenced by passion and prejudice in reaching its verdict.
18       Constant objections are unnecessary in that they could antagonize the jury.

19       In evaluating the likelihood of prejudice from the improper remarks of counsel, the
         Court should consider the totality of circumstances, including the nature of the
20       comments, their frequency, their possible relevancy to the real issues before the
         jury, the manner in which the parties and the court treated the comments, the
21       strength of the case, and the verdict itself. When the conduct of counsel in
         argument causes prejudice to the opposing party and unfairly influences a jury's
22       verdict, a new trial should be granted.

23       The grant of a new trial is confided almost entirely to the exercise of discretion on
         the part of the trial court. The trial court's decision, therefore, will not be reversed
24       absent a showing of abuse of discretion. A district court's granting of a new trial
         will be upheld if any of the district court's grounds are reasonable. A district

25

26  [5] Post-trial counsel for FEG is aware that the Court at the outset of the case granted Plaintiff's
    Motion to Strike Certain Affirmative Defenses, including the Seventh Affirmative Defense of
27  privilege/justification. Dkt. No. 72, p. 4. FEG respectfully requests that this affirmative defense
    be reinstated based on *Charles C. Chapman Bldg.*, 2 Cal. App. 3d at 855-56 and Restatement of
28  Torts, § 768.

84740102v1

DEFENDANT FEG'S MOTION FOR NEW TRIAL          CASE NO.: 5:15-cv-01893-HRL

Sedgwick LLP

1    court's ruling will not be disturbed unless the Ninth Circuit has a definite and firm
2    conviction that the court committed a clear error of judgment in the conclusion it
    reached.

3 *Woodard v. City of Menlo Park*, No. C 09-3331 SBA, 2013 U.S. Dist. LEXIS 147012, at *25-*27

4 (N.D. Cal. Sep. 30, 2013) (internal citations and markings omitted).

5        Applying the principles here should result in the same new trial relief granted in *Woodard*.

6 As in *Woodard*, plaintiff's counsel repeatedly flouted the ethical rules and presented to the jury

7 matters that, simply, were untrue.  During cross-examination of FEG's CEO, Ronald Petrinovich,

8 Plaintiff's counsel presented – three times – a line of questioning that was designed to impeach

9 Mr. Petrinovich.   Rather than using Mr. Petrinovich's deposition, however, Plaintiff's counsel

10 "impeached" Mr. Petrinovich with the testimony of another person (Mr. Bloomingkemper).  The

11 jury, naturally, would interpret this testimony to find Mr. Petrinovich is a not trustworthy or

12 credible with his testimony.

13        The lines of questioning go right to the heart of the issues in this action.  More specifically,

14 the inquiries related to: (1) a contested fact regarding agent fees about which Mr. Petrinovich's

15 testimony is critical (RT at 697:9-15); (2) deletion of emails and document retention (RT at

16 697:16-25, 702:5-16);  and, (3) the reasons why Mr. Petrinovich's computer evidence was not

17 available at trial, a subject about which the Court gave an adverse inference (RT at 704:2-705:8).

18        The impropriety of using someone's deposition to impeach a witness at trial is manifest.

19 Indeed, the only authority post-trial defense counsel could find that touched upon the subject is

20 *Remel v. State Farm Fire & Cas. Co.*, Case No. 1:07cv126-LTS, 2009 U.S. Dist. LEXIS 21649

21 (S.D. Miss. Mar. 3, 2009).  There, the court stated unequivocally: "Impeachment of a witness by

22 using a deposition transcript taken of a different witness in a separate case will not be allowed."

23 *Id.* at *4.

24        Equally clear is the duty of candor counsel owe and, relatedly, the obligation not to

25 misrepresent matters to the court.  The California Rules of Professional Responsibility state that

26 California State Bar members shall "not seek to mislead the judge, judicial officer, or jury by an

27 artifice or false statement of fact or law [and] not intentionally misquote to a tribunal the language

28 of a book, statute, or decision."  Rules of Professional Conduct, Rule 5-200(A), (C).  Rule 5-200,

Sedgwick

1  which is denominated "Trial Conduct," is made applicable to attorneys practicing before the

2  United State District Court for the Northern District of California through Local Rule 11-4(a)(1),

3  which requires counsel to "be familiar and comply with the standards of professional conduct

4  required of members of the State Bar of California[,] comply with the Local Rules of this Court

5  [and] practice with the honesty, care, and decorum required for the fair and efficient

6  administration of justice." *See also Tuttle v. Combined Ins. Co.*, 222 F.R.D. 424, 428, 432 (E.D.

7  Cal. 2004) (applying Rule 5-200 to impose sanctions on counsel for misconduct at trial); *Miller v.

8  City of L.A.*, 661 F.3d 1024, 1037 (9th Cir. 2011) ("It is well established that an attorney's reckless

9  misstatements of law and fact, when coupled with an improper purpose, . . . are sanctionable under

10  a court's inherent power." (Citations and internal quotation marks omitted.)

11       Here, the attorney misconduct at trial was prejudicial.  After the last use of the other

12  person's deposition testimony as ostensible impeachment of Mr. Petrinovich, plaintiff's counsel

13  sat down.  Counsel strategically used the other witness's deposition at the beginning, in the middle

14  and at the end of his cross-examination of Mr. Petrinovich.  The dramatic impact upon the jury is,

15  undoubtedly, reflected in the sizable jury verdict against Mr. Petrinovich's company.  In short, this

16  misconduct warrants a new trial.  *See, e.g.*, *Woodard*, *supra*, 2013 U.S. Dist. LEXIS 147012, at

17  *36 ("This is especially true given that the resolution of this case largely hinges on the credibility

18  of witnesses. By attempting to impeach Plaintiff with evidence that the Court determined is

19  unreliable and inadmissible absent leave of Court, defense counsel deliberately engaged in

20  misconduct that prejudiced Plaintiff.").

21       **C.     A New Trial Should Be Granted to Prevent a Miscarriage of Justice Based on
22              the Insufficiency of the Evidence FEG Knew Plaintiff's Contracts Precluded
               Solicitation of Downline Agents**

23       Plaintiff argued at trial that FEG knew of the existence of a contract between FFS and its

24  sales agents for two reasons.  First, Mr. Jones supplied Mr. Moua and his team with a non-

25  solicitation form:  "There would be no need for a non-solicitation form if it weren't true that FEG

26  knew that there was a contract involved."  RT, April 17, 2017, 760:15-17.  Second, Mr. Gerlicher

27  testified that non-solicitation contracts are standard in the industry.  *Id.* at 761:10-15.

28

1    This evidence is insufficient because there was no evidence supporting an inference that

2  FEG knew of the contract term regarding non-solicitation of downline agents.   There was no

3  testimony that FEG had ever seen FFS's contract.   There was no testimony that Mr. Moua or any

4  other member of his team shared with anyone at FEG the terms of FFS's contract.   And FEG's

5  contract specifically allows for post-termination solicitation of downline agents:

6           F.  Recruiting Protocol.
                            ***
7              III.  An agent at any time during the term of this Agreement, and
           for a period of two (2) years thereafter, is prohibited from directly or
8          indirectly induce (sic) or attempt (sic) to induce any person who is
           contractually affiliated with FEG LLC to terminate their relationship
9          with FEG LLC, _unless that person is in his/her downline_.

10

11  Trial Exhibit 202, p. 3.

12    Without testimony indicating FEG was aware that FFS's contract terms were different than

13  FEG's contract terms with respect to non-solicitation of downline agents, there was insufficient

14  evidence to support an inference of such terms when FEG's contract expressly provided otherwise.

15  _See, e.g., Shaw v. Lindheim_, 809 F. Supp. 1393, 1404 (C.D. Cal. 1992) (granting new trial motion

16  based on insufficiency of the evidence to support verdict of copyright infringement).

17    **D.    The Jury's Verdict on Damages Is Based on Insufficient Evidence and
         Constitutes a Miscarriage of Justice**

18

19    This Court may grant a new trial motion under FRCP Rule 59 if the jury's verdict is

20  contrary to the clear weight of the evidence, is based on false evidence, or constitutes a

21  miscarriage of justice.  _DSPT Int'l, Inc. v. Nahum_, 624 F.3d 1213, 1218 (9th Cir. 2010); _Hanson v._

22  _Shell Oil Co._, 541 F.2d 1352, 1359 (9th Cir. 1976).   The ruling on a motion for a new trial is

23  typically reviewed for an abuse of discretion [_Venegas v. Wagner_, 831 F.2d 1514, 1519 (9th Cir.

24  1987)], and the ruling rests with this Court's sound discretion.   _Kode v. Carlson_, 596 F.3d 608,

25  612 (9th Cir. 2010).

26    At the trial in this action, Plaintiff presented minimal testimony to support its claim to

27  show it suffered one million two hundred thousand dollars ($1,200,000.00) in damages, which the

28

1    jury awarded for insurance carrier chargebacks, lost profits, and lost convention fees.  But even

2    this threadbare presentation cannot withstand scrutiny.

3         As a threshold matter, because Mr. Moua and his team all could terminate their contracts at

4    any time without cause, any lost profit damages were speculative.  *See, e.g.*, *Blasé Industries*

5    *Corp. v. Anorad Corp.*, 442 F.3d 235, 238-39 (5th Cir. 2006) (impossible to determine with

6    reasonable certainty lost profit damages for breach of no hire agreement where consultant status

7    was at-will).  *See also* CACI 352 (a plaintiff "must prove that it is reasonably certain [he/she/it]

8    would have earned profits" (brackets in original)).  Here, the testimony was undisputed that Mr.

9    Moua and Ms. Lee reached out to FEG and other like companies because of his dissatisfaction

10   with the interference by FFS CEO Gerlicher regarding promotion of Thai Thao.  *See* RT at 449:8-

11   474:24, 481:8-18 (Mr. Moua); RT 531:19-546:4, 550:19-24 (Ms. Lee).  Indeed, Mr. Moua

12   submitted his resignation letter nine days after the effective date Mr. Thao was promoted. RT

13   270:13-14, 272:2-25.  Under these circumstances, since the contracts at issue could be terminated

14   without notice, the damages award was speculative.

15        In addition, the only basis for Plaintiff's claimed damages is Nathan Caine, FFS's Manager

16   of the Commissions Department, who testified that FFS archives its commission statements and

17   tracks every chargeback and commission paid out for each carrier.  RT 285:15-17.  Mr. Caine

18   provided Plaintiff's damages expert with "all of our commission records, all of our historical

19   data."  RT 286:19-21.  Meg Jones, FFS's President, testified that a chargeback occurs if a

20   customer cancels a policy before payment and the insurer has already advanced commission for

21   the policy.  RT 125:7-20. After Mr. Moua and his team left, Ms. Jones testified that FFS "had a

22   large number of chargebacks in the early months, and ongoing."  RT 157:6-15.

23        Yet, no percipient witness testified about convention fees or even that Plaintiff's expert

24   had been provided with documentation with respect to convention revenue or expenses.  Plaintiff's

25   damages expert testified that he "looked at convention revenue."  RT 295:7-9.  He used the fee of

26   $100 for attending a convention and multiplied the fee by 2,921, the number of Mr. Moua's team

27   that the expert estimated would have attended Plaintiff's conventions in 2015, to conclude that

28

Sedgwick LLP

1  Plaintiff suffered convention fee damages of two hundred ninety-two thousand dollars

2  ($292,000.00).  RT 308:8-310:14.

3      Moreover, Plaintiff's expert relied on records and calculations that were never admitted

4  into evidence.  Indeed, no witness at trial testified about the evidentiary content of those records.

5  Rather, trial testimony only revealed that the records had been provided to Plaintiff's expert and

6  the expert visited Plaintiff's workplace.  Also undermining the expert's opinion is the fact that he

7  did not testify about what increased expenses FFS would have incurred if 2,921 more people

8  attended its conventions.

9      This is not substantial evidence.  *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d

10  1222, 1227  (9th Cir. 2001) ("Substantial evidence is evidence adequate to support the jury's

11  conclusion, even if it is also possible to draw a contrary conclusion from the same evidence.").

12  Nor may it support Plaintiff's damages claims.  *Radware, Ltd. v. F5 Networks, Inc.*, No. 13-cv-

13  02024-RMW, 2016 U.S. Dist. LEXIS 18010, at *58 (N.D. Cal. Feb. 13, 2016).  ("Ms. Stamm may

14  rely on factual evidence supplied by Mr. Needham and Mr. Schaller *if* F5 presents such foundation

15  evidence at trial") (emphasis added).  *See also Oracle Am., Inc. v. Google Inc.*, No. C 10-03561

16  WHA, 2011 U.S. Dist. LEXIS 136172, 2011 WL 5914033, at *1 (N.D. Cal. Nov. 28, 2011)

17  ("Expert reliance on foundational facts supplied by [defendant's] engineers can be proper so long

18  as they testify to the foundational facts with firsthand knowledge."); *Therasense, Inc. v. Becton,*

19  *Dickinson & Co.*, No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 124780, 2008 WL 2323856 at

20  *2 (N.D. Cal. May 22, 2008) ("The traditional and correct way to proceed is for a foundational

21  witness to testify first-hand at trial to the foundational fact . . . and to be cross-examined. Then the

22  expert can offer his or her opinion on the assumption that the foundational fact is accepted by the

23  jury.").

24      "The right of setoff (also called 'offset') allows entities that owe each other money to

25  apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B

26  when B owes A.'"  *Citizens Bank v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d

27  258, 262 (1995) (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528, 57 L. Ed. 1313, 33 S.

28  Ct. 806 (1913)).  Here, Plaintiff kept renewals of over 10 million dollars ($10,000,000.00) that Mr.

Sedgwick<sub>LLP</sub>

1   Moua was to have received.  *Citizens Bank* dictates that the jury's one million two hundred

2   thousand dollars ($1,200,000.00) verdict be offset by the $10 million in renewals that Plaintiff

3   kept instead of paying Mr. Moua and his team even though they were entitled to those renewals.

4   RT 124:16-125:6, 126:10-18, 262:12-14, 639:21-22, 649:23-652:7, 658:17-659:8.    Equitably, it

5   is a miscarriage of justice to allow Plaintiff to keep the damage awards without being subject to

6   any offset and, essentially, garner a double recovery.

7        This Court should grant a new trial because Plaintiff did not present enough evidence to

8   uphold one million two hundred thousand dollars ($1,200,000.00) in damages, which the jury

9   awarded for insurance carrier chargebacks, lost profits, and lost convention fees.  At bottom, the

10  weight of the evidence is against the jury's damage awards.[6]

11       In addition, the jury's verdict, including its damage awards, arose after the jury was

12  presented with false evidence.  As shown above, Plaintiff's counsel used improper evidence

13  during cross-examination of FEG's CEO, Ronald Petrinovich.  Counsel falsely attributed

14  statements made by another person to Mr. Petrinovich.  In combination with the absence of

15  evidence to support the damages, the jury's verdict resulted in a miscarriage of justice.  *Hanson v.*

16  *Shell Oil Co.*, *supra*, 541 F.2d at 1359.  A new trial is warranted for this reason, too.

17  **V.    CONCLUSION**

18       For the reasons explained above, Defendant Freedom Equity Group, LLC respectfully

19  requests that the Court grant FEG's motion for a new trial.

20  Dated:  May 16, 2017                    SEDGWICK LLP

21

22                                    By:    ___/s/ Paul Riehle_____
                                         Paul Riehle
23                                       Attorneys for Defendant
                                         FREEDOM EQUITY GROUP, LLC

24

25  _____

26  [6] FEG recognizes that it cannot ask for judgment in its favor under FRCP Rule 50.  Nonetheless, this Court can grant a new trial, since the absence of any substantial evidence on damages logically supports a finding that the clear weight of the evidence is against Plaintiff's damage award.  *See Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1013 (9th Cir. 2007) (reviewing, albeit under different appellate standards of review, motions under FRCP Rules 50 and 59 that presented identical arguments).

DEFENDANT FEG'S MOTION FOR NEW TRIAL                    CASE NO.: 5:15-cv-01893-HRL