UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST FINANCIAL SECURITY, INC., Plaintiff, v. FREEDOM EQUITY GROUP, LLC, Defendant. | Case No.15-cv-01893-HRL **ORDER DENYING MOTION FOR A NEW TRIAL; ORDER DENYING ADMINISTRATIVE MOTION** Re: Dkt. Nos. 148, 171 |

The companies involved in this action employ independent sales contractors in hierarchical teams to sell insurance policies provided by third parties. The trial concerned Plaintiff First Financial Security, Inc.'s ("FFS") claim that Defendant Freedom Equity Group, LLC ("FEG") intentionally interfered with FFS's contracts with its independent sales contractors. 1,400 of these contractors left FFS for FEG after their team leaders, Gilles Moua and Mai Lee, departed the former for the latter. After a six-day trial, a jury returned a verdict finding FEG liable for intentional interference with contract and awarding FFS $1,200,000 in damages. Dkt. No. 133. FEG now moves the court for a new trial. Dkt. No. 148.

In its motion, FEG argues that (1) the jury's verdict is contrary to the clear weight of the evidence; (2) attorney misconduct unfairly influenced the verdict; and (3) a miscarriage of justice would result absent a new trial. For the reasons explained below, the court denies FEG's motion.

**FEG'S ADMINISTRATIVE MOTION**

Before addressing FEG's arguments, the court first turns to FEG's administrative motion to file supplementary material. FEG requests leave to file a Request for Judicial Notice of four documents in *Do, et al. v. FFS, et al.*, Central District of California Case No. 2:14-cv-07608. Dkt. No. 171. FEG asserts that the supplemental material is relevant to its arguments concerning the validity of the non-recruitment covenants between FFS and its independent sales contractors and

to whether California law applies.[1] *Id.* FEG submitted its administrative motion two weeks after the hearing on its new trial motion. It asserts that its post-trial counsel was not aware of some of the supplemental materials until after FEG filed its reply brief, and that other supplemental materials were not filed in the Central District until after the hearing.

The court is not persuaded good cause exists to grant FEG's administrative motion to file a Request for Judicial Notice. Documents from the Central District suit were available when FEG filed its motion for a new trial, and, as FFS states in its opposition, FEG has already argued that counsel for FFS had a duty to inform the court of Business and Professions Code Section 16600 and related authority. Further, the court is not persuaded that the residency of class members in the Central District suit is relevant to the choice-of-law issues in this case, which involves a different set of facts. The court therefore denies FEG's administrative motion.

## LEGAL STANDARD

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, the court may grant a motion for a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. The Ninth Circuit has explained that a new trial may be granted "only if the verdict is contrary to the clear weight of the evidence[ or] based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). In evaluating the evidence on a motion for a new trial, the judge may "weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). To grant a new trial, the judge "must have a firm conviction that the jury has made a mistake." *Id.*, at 1372.

**I.     The Clear Weight of the Evidence.**

The court first addresses FEG's arguments that a new trial is necessary because the jury's verdict was contrary to the clear weight of the evidence.

**A. FEG's Knowledge of FFS's Contract Provisions.**

---

[1] FEG submits that 253 of the 355 putative class members in the Central District suit are California residents.

2

FEG argues there was insufficient evidence demonstrating FEG's knowledge that FFS's contract prevented the recruitment of downline agents. FEG asserts that no witnesses testified that FEG had ever seen FFS's contracts, and that no witness testified that Moua or his team shared the terms of the FFS contracts with FEG. FEG also points out that FEG's own contract allows solicitation of downline agents: section F.III of FEG's contract states that agents may not "induce or attempt to induce any person who is contractually affiliated with FEG LLC to terminate their relationship with FEG LLC, *unless that person is in his/her downline*." Dkt. No. 148, Riehle Decl., Ex. 2 (Trial Exhibit 202) (emphasis added).

The jury's conclusion as to FEG's knowledge was supported by the clear weight of the evidence. First, FEG's contract contains two different clauses related to recruiting agents. While one (section F.III) excludes downline agents from the prohibition on solicitation, the other—the termination provision—does not. Dkt. No. 154, Davidson Decl., Ex. E (Trial Exhibit 202), § 6.C (prohibiting agents from "recruit[ing] any FEG Agent into another similar, insurance/recruiting/ multi-level organization for a period of 24 months."). Second, FFS officer Phil Gerlicher testified that non-solicitation provisions are standard in the industry. Dkt. No. 154, Davidson Decl., Ex. A, Tr. at 257. Third, Moua testified that Michael Jones, an FEG agent, gave him a non-solicitation form to distribute to his team members to sign. *Id.*, 490:11-15. Fourth, Jones testified that he asked Lee to have her and Moua's team members sign the non-solicitation forms before discussing FEG. *Id.*, Ex. B, Tr. at 105:19-25.

Fifth, and most telling, the jury was shown a departure letter Moua sent his colleagues at FFS. The letter, attached to e-mail correspondence involving Michael Jones, states: "We [Moua and Lee] cannot and will not Discuss what we are doing next with you as we do not want to violate [the] contract we have with FFS." *Id.*, 63:7-15. Though Jones denied writing the letter, the jury was shown the document's properties. The author was "Michael." The document was created May 9, 2014—the day before Moua decided to leave FFS (according to his testimony). The letter caused significant damage to Jones's credibility, which already suffered due to his cagey demeanor on the witness stand.

The facts described above lead to one conclusion: FEG knew about FFS's non-recruitment

3

provision. If FEG did not have this knowledge, why did it supply the non-solicitation forms? And why did Jones draft a resignation letter alluding to contractual restrictions on Moua and Lee's communications with their former colleagues? The clear weight of the evidence supported the jury's resolution of this issue.

### B. Damages.

FEG next argues that the damages verdict is based on insufficient evidence, for several reasons: (1) lost profits are speculative because Moua and his team could have resigned at any time without cause; (2) no percipient witness testified about convention fees or that FFS's expert, Arthur Cobb, had been given documentation regarding convention revenue or expenses; (3) Cobb did not testify what expenses FFS would have incurred if Moua's team members had attended its conventions; and (4) FFS kept renewals of over $10 million that otherwise would have gone to Moua and his team, and these renewals should off-set the $1.2 million damages verdict. FEG asserts that the verdict is a miscarriage of justice because it is based on insufficient evidence.

FFS argues first that FEG's attack on Cobb's testimony is an untimely *Daubert* challenge that should have been raised before or during trial, when FFS could have set a proper foundation for Cobb's testimony if the court ruled such foundation was lacking. Second, FFS argues that Cobb's testimony was admissible and reliable, because an FFS witness testified to giving Cobb historical data, and Cobb testified to speaking to individuals at FFS.

FEG's attack on Cobb's testimony—at least inasmuch as it concerns the *admissibility* of Cobb's report rather than the weight to be assigned to it—is untimely. *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir. 1996) (holding that a party waived a *Daubert* challenge by failing to object to evidence at trial, and that the *Daubert* challenge could not be raised for the first time in the context of an insufficiency-of-the-evidence argument). FEG did not object—either before or during trial—to the foundation for Cobb's evidence or its reliability. Not only did FEG fail to object, but FEG's own rebuttal expert relied on the same data Cobb had used.

But even if FEG's challenge were timely, it would not succeed because Cobb's report rested on a reliable foundation. FFS witness Nathan Caine testified that FFS archives its commission statements and chargebacks, and that he provided to Cobb "all of [FFS's] commission

4

records, all of [its] historical data." Dkt. No. 148, Riehle Decl., Ex. 3, Tr. 285:15-17, 286:19-21. Cobb testified about his experience and qualifications, Dkt. No. 154, Davidson Decl., Ex. A, Tr. at 289-290, and to his preparations, including speaking with FFS employees, *id.*, 293:7-12. Cobb also testified to looking at "historical information" as to convention revenues and profits. There was no indication that the "historical data" provided to Cobb by FFS did not include convention information. In light of these considerations, it would not be a miscarriage of justice to let Cobb's testimony stand.

The court now turns from the admissibility of the evidence to its weight. A court may grant a motion for a new trial because the damages award is "excessive" and "contrary to the clear weight of the evidence." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). Cobb's testimony, however, supports the jury's verdict.

The jury heard testimony from Cobb and Jones about lost profits and how far into the future they could reasonably be estimated. Cobb's projections stopped at three and five years into the future, and the jury ultimately awarded less in damages than his more conservative projections. Though there is some question about how long Moua and his team would have stayed with FFS absent FEG's actions, the jury heard evidence regarding the historical number of resignations from FFS and the staggering departure from these trends that Moua's team's sudden exodus represented. Dkt. No. 154, Davidson Decl., Ex. A, Tr. 151:21-152:4. From this evidence, the jury could have concluded that, absent FEG's conduct, Moua's team was reasonably certain to stay with FFS long enough for Plaintiff to incur the lost profits the jury awarded. These lost profits were reduced from those Cobb proposed in his projections, perhaps accounting for the jury's consideration of Moua's team's uncertain tenure with FFS. As a result, the court is not persuaded by FEG's arguments that lost profits are too speculative to support the damages award.[2]

---

[2] *Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235 (5th Cir. 2006), which FEG cites for its assertion that one cannot recover lost profits for interference with an at-will employment relationship (because the duration of the relationship is too speculative as a matter of law), is a Fifth Circuit case discussing Texas law. This is not the law in California. *See Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) (confirming that employers may bring claims for interference with at-will employment contracts); *Toscana v. Greene Music*, 124 Cal. App. 4th 685, 694 (2004) (holding

5

With respect to convention fees, Cobb testified that he looked at "historical information" as to convention attendance and revenue from conventions. Critically, he made a distinction between "revenue" and "profit" to FFS from conventions, which yields the inference that the costs to FFS of the additional convention attendees were already baked into his analysis. Dkt. No. 148, Riehle Decl, Ex. 3, Tr. 310:7-14. Thus, FEG's arguments regarding the lack of foundation for lost convention profits and Cobb's failure to discuss costs of additional attendees are not persuasive.

Finally, FEG argues—as its rebuttal expert Jones argued at trial—that FFS should not receive any damages because its lost profits are off-set by $10 million in renewal payments that would have been paid to Moua and his team had they remained at FFS. Cobb testified persuasively to this issue at trial. Cobb argued that Jones's estimates of lost profits stopped at 3-5 years in the future (that is, Jones accepted Cobb's estimates for lost profits), but that his estimates for renewal payments extended 30 years into the future, such that Jones was no longer comparing apples to apples. Dkt. No. 154, Davidson Decl., Ex. A, Tr. 313:24-314:17. FEG does not address the discrepancy in the timeframes for these estimates or explain why Jones's seemingly erroneous approach is valid.

In light of the above, the court concludes that the jury's damages award was not contrary to the clear weight of the evidence.

## II. Attorney Misconduct.

At trial, counsel for FFS impeached an FEG witness, Ron Petrinovich, by reading from deposition testimony that FFS counsel asserted was Petrinovich's. The deposition testimony was actually from another FEG witness, Ron Bloomingkemper. When FEG raised this issue to the court outside of the jury's hearing, FFS admitted to the mistake and the court issued a curative jury instruction after both parties agreed to the instruction's content. FEG now argues that counsel for FFS improperly impeached Petrinovich three times during his testimony and that two instances

---

that lost future wages are recoverable if they are not too speculative and analogizing to lost profits); *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 883 (2002) (confirming that lost profits may be recoverable for business interference torts). *Toscana*, in which the court found lost wages too speculative on the facts of that case, is distinguishable, in that FFS here presented evidence of its historical rate of resignations to the jury.

6

of alleged improper impeachment were neither admitted to nor corrected by a jury instruction. This misconduct, FEG asserts, so prejudiced the jury against FEG that a miscarriage of justice would result absent a new trial.

To grant a new trial based on attorney misconduct under Rule 59, "the flavor of the misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Cotton v. City of Eureka*, 860 F. Supp. 2d 999, 1016 (N.D. Cal. 2012) (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000)).

Petrinovich and Bloomingkemper were not ideal witnesses for FEG. Both FEG officers did not preserve and produce evidence during discovery because their computers were unavailable, though they had different stories for how their computers were destroyed.[3] Counsel for FFS improperly impeached Petrinovich by confusing his excuse for his computer's destruction with Bloomingkemper's. In addition, Counsel for FFS read statements from Bloomingkemper's deposition that he "delete[s] everything" after reading it and that he "turned everything over to Mike Jones" after Petrinovich denied doing both of these things, making Petrinovich seem unreliable. Though each of these instances of improper impeachment was prejudicial, far greater damage was done to *both* Petrinovich's and Bloomingkemper's credibility by the undisputed fact that both of their computers were unavailable for production. This fact alone suggests that the alleged misconduct did not "sufficiently permeate" the entire proceeding such that it merits a new trial.[4] Additionally, by the time Petrinovich and Bloomingkemper testified, the jury had already been given ample reason to doubt FEG's overarching narrative, as it had been called into question by FFS's effective cross-examination of Jones and other FEG witnesses.

During the trial, FFS admitted to only the improper impeachment involving the destruction of the computers. As a result, the court's curative instruction addressed only that instance of

---

[3] One of the computers was destroyed (purportedly by accident) on the morning of the deposition at which it was to be produced. Coincidence?
[4] This fact also suggests that counsel for FFS, who gave the court no reason to doubt the sincerity of his apology, had little to gain from pulling a fast one on FEG through his improper impeachment. Both witnesses could have been effectively impeached without this stratagem.

7

improper impeachment. FEG argues that the court's curative instruction was inadequate in part because it did not address the full scope of the misconduct. FEG's argument is undermined, however, by the fact that its own counsel failed to point out the other two instances of improper impeachment to the court, despite being given the opportunity to review the trial transcript and suggest language for the instruction. FEG's counsel's failure to catch these instances of improper impeachment confirms the court's impression: they had minimal impact on the proceedings.

**III.     Miscarriage of Justice and Intentional Interference with Contract.**

FEG's remaining three arguments involve questions that FEG could have raised at an earlier time, but did not. FEG argues that a miscarriage of justice would result if the court does not allow a new trial because (1) the business justification privilege precludes liability for intentional interference with contract claims; (2) intentional interference with an at-will contract requires an independently wrongful act, and FFS did not prove that FEG engaged in any such act; and (3) intentional interference with contract cannot be based on a void contract term, and the non-recruitment covenants in the FFS contracts are void under California law. In response, FFS asserts that these arguments are untimely and improper, and that a defendant's decision not to raise an argument prior to trial cannot be the basis of a Rule 59 motion. FEG responds that legal issues can be raised at any time, including for the first time on appeal, and that its arguments with respect to void terms and an independently wrongful act present pure questions of law.

**A.  Business Justification Privilege.**

FEG's business justification privilege argument is untimely. FEG plead an affirmative defense of privilege/justification in its answer to the complaint. Dkt. No. 38. The court, however, on FFS's motion, struck this defense on the grounds that FEG failed to plead any valid factual basis for it. Dkt. No. 72. The court granted FEG leave to amend its answer within five days after the date of its order. *Id.* FEG could have filed an amended answer including an affirmative defense of privilege/justification as long as it was supported by specific factual allegations. *Id.* FEG did not do so.

FEG has only requested reinstatement of its affirmative defense now in its motion for a new trial. Under Rule 15, a court should grant leave to a party to amend its pleadings when justice

8

requires. Fed. R. Civ. P. 15. A court, however, may deny a motion for leave to amend where the amendment "would produce an undue delay in the litigation." *Irise v. Axure Software Solutions, Inc.*, No. CV 08-03601 SJO (JWJx), 2009 WL 3615973 (C.D. Cal. Jul. 30, 2009). The undue delay factor assesses "whether [the party] unduly delayed in filing [its] motion." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Late amendments "are not reviewed favorably when the facts and theory have been known to the party seeking amendment since the inception of the cause of action." *Irise*, 2009 WL 3615973, at *6 (quoting *Acri v. Int'l Ass'n of Mach. & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)).

FEG had all of the facts needed to amend its answer by the deadline set by the court for an amendment. It chose not to amend, and instead waited almost a year, until after the jury returned an adverse verdict, to attempt to revive its defense. To say that FEG unduly delayed filing its motion is an understatement. The court denies its request. As the justification/privilege defense is not reinstated, it does not support a motion for a new trial.

**B. Independently Wrongful Act.**

In *Reeves v. Hanlon*, the California Supreme Court held that, "to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act . . . that induced an at-will employee to leave the plaintiff." 33 Cal. 4th 1140, 1152-53 (2004). The Supreme Court reasoned that interference with an at-will employment relationship was, in effect, interference with a prospective economic advantage. As such, it held that plaintiffs must prove, in addition to the similar elements applicable to both torts, the element described above, which is unique to the tort of interference with prospective economic advantage. *Id.*

The jury was instructed on the elements of intentional interference with contract without the additional element. Defendant, however, submitted this instruction as a joint proposed jury instruction prior to the pre-trial conference. Dkt. No. 91. Defendant also submitted a joint proposed verdict form that mirrored the jury instruction. Dkt. No. 94. Defendant did not object to the jury instruction or verdict form at any point during the trial, despite having opportunity to do so. Dkt. No. 154, Davidson Decl., Ex. A, Tr. 725:17-19, 734:3-16.

9

1   For a court to grant a new trial due to an erroneous jury instruction, the moving party must object to the instruction before the jury retires for deliberations. *Boston Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1110 (N.D. Cal. 2008); *FN Enters., Inc. v. Callahan Mining Corp.*, C-92-1420 LCB, 1995 WL 509459, at *6-7 (N.D. Cal. Aug. 18, 1995). FEG waived its right to challenge the jury instruction by failing to object to it, and, as a result, the court will not grant the motion for a new trial on this basis.[5]

FEG's independently wrongful act argument is also untimely and improper for the reasons explained below.

### C. Void Contract Term.

FEG's argument that a miscarriage of justice would result absent a new trial because (1) intentional interference cannot be based on a void contract term and (2) the non-recruitment term is void under California law is, essentially, an argument that FFS fails to state a claim upon which relief may be granted. As with the "independently wrongful act" argument, FEG raises this argument for the first time in its motion for a new trial. This is untimely and improper.

FEG did not raise its arguments as to the legal sufficiency of FFS's claim in its motion to dismiss; it did not file a motion for summary judgment or for judgment on the pleadings; and it did not file a Rule 50 motion during trial. "A motion for a new trial is not the appropriate place to raise for the first time arguments that could have been brought earlier in the proceedings." *Production Specialties Grp., Inc. v. Minsor Sys., Inc.*, 513 F.3d 695 (7th Cir. 2008) (rejecting a party's argument when the issue easily could have been resolved earlier in the proceedings but was not mentioned until the new trial motion); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 67 F. Supp. 3d 1100, 1132 (N.D. Cal. 2014) (finding that no miscarriage of justice would result from

---

[5] The court is also not persuaded that the jury instruction was plainly erroneous (such that no objection would have been necessary). The California Supreme Court's holding in *Reeves* is expressly limited to wrongful acts "that induced an at-will employee to leave the plaintiff." 33 Cal. 4th at 1153. The Court did not "express an opinion whether an independent wrongfulness requirement would be appropriate for cases in which a defendant allegedly induces the breach of an otherwise enforceable term of an at-will contract." *Id.*, n.7. Here, FEG's conduct went beyond simply inducing Moua and Lee to leave FFS. The jury also heard evidence that FEG facilitated Moua and Lee's breach of the non-recruitment and confidential information provisions of the sales contractor agreements. It is not clear that a plaintiff must prove an independently wrongful act for such interference.

10

the denial of a motion for a new trial where a party had "ample opportunities" to present an argument earlier); *Jet Capital v. U.S.*, 505 F. App'x 776, 779 (10th Cir. 2012) (concluding the district court did not abuse its discretion by denying a motion for a new trial that raised an argument that could have been advanced earlier in the proceedings). FEG had ample opportunity to raise this argument at an earlier time, and it chose not to do so. The court did not prevent FEG from filing a Rule 50 motion. It did not control or limit the scope of FEG's motion to dismiss. Counsel either made a strategic decision not to pursue this argument, or it was asleep at the wheel. Allowing the result to stand would not be a miscarriage of justice.

Finally, even if FEG's void-contract-term argument were proper and timely, the court is not persuaded that a miscarriage of justice would result absent a new trial because it is not clear whether the particular non-solicitation provision is void under California law. Though non-compete agreements and non-solicitation-of-customer agreements are generally void under California law, *see* Cal. Bus. & Prof. Code § 16600; *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008), the term at issue in this case involves the non-solicitation of employees. The court observes without deciding that courts do not all agree that such clauses are invalid. *See Sunbelt Rentals, Inc. v. Victor*, 2014 WL 492364, at *9 (N.D. Cal. 2014); *Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 546497, at *6; *see also Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 279-80 (1985).

\*

All three of FEG's arguments that a miscarriage of justice would result if its motion were denied could have been made before or during trial. They were not. Instead, counsel for FEG either acquiesced or actively participated in the features of the trial that post-trial counsel now calls error. FEG received the trial it asked for, and only now that the jury has returned an adverse verdict does it seek a do-over. Considering the conduct of this litigation and the record as a whole, the court is satisfied that no miscarriage of justice will result absent a new trial.

## CONCLUSION

From the court's perspective, the jury correctly decided this case. Throughout the litigation, Defendant's witnesses acted like they had something to hide. Two of Defendant's

11

principals were unable to produce evidence during discovery because of the coincidental destruction of their respective laptops—one on the very morning of the principal's deposition. Due to this and other FEG discovery shortcomings, the court issued *two* adverse inference instructions to the jury. Michael Jones, the architect of the departure of the 1,400 FFS contractors, was a poor witness who was repeatedly impeached by documents that he originated. In particular, his authorship of Moua's resignation letter *before* the date Moua testified he decided to leave FFS revealed profound holes in the testimony of many of FEG's key witnesses. In light of these flaws in FEG's story and its presentation, the mistakes made by FFS's counsel—for which the court chastised FFS and issued curative instructions—did not infect the trial with prejudice (in fact, the court doubts that the mistakes even registered). Counsel for FEG presented FEG's narrative. It was not persuasive. After reviewing the evidence, the court supports the jury's verdict, and notes that its size—less than FFS's expert's most conservative estimate of damages—indicates that the jury was not simply swept away by prejudice toward the Defendant or anger at its witnesses' dissembling testimony.

In short, the court is satisfied that the verdict was supported by the clear weight of the evidence and that there was no miscarriage of justice. FEG's motion for a new trial is denied.

**IT IS SO ORDERED.**

Dated: 8/21/2017

HOWARD R. LLOYD
United States Magistrate Judge